## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

**GREG PRICE**

     **Plaintiff,**

**v.**                                                  **Case No. 1:12-cv-15028-TLL-CEB**

**PBG HOURLY PENSION PLAN**
                                                       **Hon. Thomas Ludington**
**And**

**BOTTLING GROUP, LLC**

     **Defendants.**

_____/

| | |
|---|---|
| THE MASTROMARCO FIRM<br>VICTOR J. MASTROMARCO, JR. (P34564)<br>Attorneys for Plaintiff<br>1024 N. Michigan Ave.<br>Saginaw, MI 48602<br>(989) 752-1414 | THOMPSON COBURN, LLP<br>BY: RICHARD J. PAUTLER<br>(MO Bar # 30789)<br>Attorneys for Defendants<br>One US Bank Plaza – 28th Floor<br>St. Louis, MO 63101<br>(314) 552-6470<br>(314) 552-7470(fax)<br>rpautler@thompsoncoburn.com<br><br>STROBL & SHARP, P.C.<br>By: HENRY J. ANDRIES, JR. (P53669)<br>Local Counsel for Defendants<br>300 E. Long Lake Rd., Ste. 200<br>Bloomfield Hills, MI 48304<br>(248) 540-2300<br>handries@stroblpc.com |

_____/


## DEFENDANTS' MOTION TO DISMISS
## OR IN THE ALTERNATIVE TO TRANSFER VENUE

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a), Defendants respectfully request that this Court dismiss this action because venue is not proper in this Court. Alternatively, the Court should transfer this action to the United States District Court for the Southern District of New York.

On December 13, 2012, there was a telephone conference between Defendants' counsel, Richard J. Pautler, and Plaintiff's counsel in which the movant explained the nature of the motion and its legal basis and requested, but did not obtain concurrence in the relief sought. Mr. Pautler also emailed a draft copy of Defendants' brief to Plaintiff's counsel on December 14, 2012 and asked that Plaintiff advise Mr. Pautler by noon on December 17, 2012 if he concurred.

The points and authorities supporting this Motion are set forth in the Brief in Support, filed herewith, together with the Affidavit of Chad Ryan.

**THOMPSON COBURN LLP**

By:   */s/ Richard J. Pautler, Esq*
          Richard J. Pautler
          (Mo. Bar. No. 30789)
          Attorney for Defendants
          One US Bank Plaza – 28th Floor
          St. Louis, MO  63101
          (314) 552-6470 / (314) 552-7470 (fax)
          rpautler@thompsoncoburn.com

and

**STROBL & SHARP, PC**

By:   */s/ Henry J. Andries, Jr.*
          Henry J. Andries, Jr.
          300 East Long Lake Road Suite 200
          Bloomfield, Hills, MI 48304-2376
          (248) 540-2300 / (248) 645-2690 Fax
          handries@stroblpc.com

Attorneys for Defendants

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on the 17th day of December, 2012 a copy of the foregoing was served by operation of the Court's electronic filing system upon:

Victor J. Mastromarco, Jr.
1024 N. Michigan Ave.
Saginaw, MI 48602

*/s/ Henry J. Andries, Jr.*

J:\DOCS\112026\001\PLDG\SB395906.DOC

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

**GREG PRICE**

  **Plaintiff,**

**v.**                                                      **Case No. 1:12-cv-15028-TLL-CEB**

**PBG HOURLY PENSION PLAN**

                                                           **Hon. Thomas Ludington**
**And**

**BOTTLING GROUP, LLC**

  **Defendants.**

_____/

| | |
|---|---|
| THE MASTROMARCO FIRM | THOMPSON COBURN, LLP |
| VICTOR J. MASTROMARCO, JR. (P34564) | BY: RICHARD J. PAUTLER |
| Attorneys for Plaintiff | (MO Bar # 30789) |
| 1024 N. Michigan Ave. | Attorneys for Defendants |
| Saginaw, MI  48602 | One US Bank Plaza – 28th Floor |
| (989) 752-1414 | St. Louis, MO 63101 |
| | (314) 552-6470 |
| | (314) 552-7470(fax) |
| | rpautler@thompsoncoburn.com |
| | |
| | STROBL & SHARP, P.C. |
| | By:  HENRY J. ANDRIES, JR. (P53669) |
| | Local Counsel for Defendants |
| | 300 E. Long Lake Rd., Ste. 200 |
| | Bloomfield Hills, MI  48304 |
| | (248) 540-2300 |
| | handries@stroblpc.com |

_____/

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS, OR**
**ALTERNATIVELY, TO TRANSFER**

## Table of Contents

Statement of Issues Presented..............................................................................ii

Statement of Controlling Authority .....................................................................iii

Introduction...........................................................................................................1

Overview of Plaintiff's Claim ..............................................................................1

Factual Allegations in Complaint.........................................................................2

Facts Regarding the PEP Plan..............................................................................3

Law and Argument................................................................................................3

Conclusion ..........................................................................................................11

Certificate of Service...........................................................................................12

## Statement of Issue Presented

Has Plaintiff met his heavy burden of proving that the Court should not enforce the forum selection clause included in the plan document of the applicable employee benefit plan such that the Court should disregard that forum selection clause and refuse to dismiss or transfer this matter to the Southern District of New York.

## Statement of Controlling Authority

The United States Supreme Court repeatedly has affirmed its commitment to enforcing venue selection clauses. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *M/S Bremen v. Zapata Off-Shore Co*., 407 U.S. 1 (1972).

When enforcing a forum selection clause, federal courts are to consider (1) whether the clause was obtained by fraud, duress or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Wong v. PartyGaming, Ltd.,* 589 F.3d 821, 828 (6th Cir. 2009).

Every district court within the Sixth Circuit has applied those factors and determined that the forum selection clauses in the ERISA plans should be enforced. *Conte v. Ascension Health*, No. 11-12074, 2011 WL 4506623 (E. D. Mich. Sept. 28, 2011) (Judge P. J. Duggan); *Sneed v. Wellmark Blue Cross and Blue Shield of Iowa*, No. 1:07-CV-292, 2008 WL 1929985, 2 (E.D. Tenn. April 30, 2008); *Williams v. CIGNA Corp*., No. 5:10-CV-00155, 2010 WL 5147257 (W.D. Ky. Dec. 13, 2010).

One federal district court already has enforced the forum selection clause in the same ERISA plan at issue in this case. *Scaglione v. Pepsi-Cola Metropolitan Bottling Co. Inc*., No. 1:12CV01431, 2012 WL 3095342, 1 (N.D. Ohio July 30, 2012). Another district court enforced a similar forum selection clause in another employee benefit plan sponsored by PepsiCo, Inc. *Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855, 857 (N.D. Cal. 2010).

The party opposing the forum selection clause bears the heavy burden of showing that the clause should not be enforced. *Shell v. R.W. Sturge, Ltd*., 55 F.3d 1227, 1229 (6th Cir. 1995).

## Introduction

Plaintiff, Greg Price, claims he is entitled to receive pension benefits from what was formerly known as the PBG Hourly Pension Plan and what now is known as PepsiCo Hourly Employees Retirement Plan ("PEP Plan").  The PEP Plan includes a provision that requires all suits brought or filed after January 1, 2011 be filed in the United States District Court for the Southern District of New York.  Plaintiff filed this lawsuit in November 2012 in this Court.  Because the only proper venue is the Southern District of New York, Defendants respectfully move this Court, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss Plaintiff's lawsuit or, alternatively, to transfer it to the Southern District of New York.  Pursuant to Local Rule 7.1, Defendants file this supporting Brief.

## Overview of Plaintiff's Claims

Plaintiff's claims concern the terms of the PEP Plan.  He asserts that he is either entitled to an immediate "disability retirement benefit" under the terms of the PEP Plan or, alternatively, that the terms of the PEP Plan are not what they are supposed to be, that a collective bargaining agreement required the PEP Plan terms to be different than they are.  He alleges "That Defendants violated the Employee Retirement Income Security Act by denying Plaintiff disability retirement benefits he was entitled to under the provisions of the Hourly Pension Plan documents and the collective bargaining agreement."[1]

## Factual Allegations in Complaint

Plaintiff alleges that he began working for Bottling Group, LLC April 8, 1993.[2]  He asserts that he worked for Bottling Group, LLC[3] for more than ten years when he suffered a

---

[1]  Complaint, ¶ 40.

[2]  Complaint, ¶ 5.

1

career-ending injury to his back in April 2005.[4]  He claims that the Social Security Administration

concluded that he had become disabled beginning December 24, 2006.[5]  He contends that the fact

he worked for more than 10 years and now qualifies for Social Security disability benefits entitles

him to an immediate disability pension under the PEP Plan.[6]  He asserts that he submitted a claim

for PEP Plan benefits, but that his final appeal was denied by the PepsiCo Administration

Committee ("PAC")[7] on July 15, 2010.[8]  In that letter the PAC wrote:

> Since you were not deemed Totally and Permanently Disabled
> before January 1, 1993, you are not eligible for the Immediate
> Disability Pension according to Section 4.6(d).  Additionally, since
> you were not employed prior to January 1, 1993, the date when
> subsection (c), the Deferred Disability Pension provision began to
> apply, you are not eligible for the Immediate Disability Pension
> according to Section 4.6(e).[9]

Plaintiff continued to submit materials regarding his claim for benefits.[10]  Defendants,

however, continued to cite and rely upon the PAC's July 15, 2010 determination.  On December

21, 2011, PepsiCo referred to Plaintiff's "post appeal" correspondence and reminded Plaintiff that

---

[3]  The Collective Bargaining Agreement attached to Plaintiff's Complaint as Exhibit B refers to "The Pepsi Bottling Group, Inc." not "Bottling Group, LLC."

[4]  Complaint, ¶ 8.

[5]  Complaint, ¶ 11.

[6]  Complaint, ¶¶ 76-77.

[7]  Plaintiff mistakenly refers to the "Pension Administration Committee" rather than the "PepsiCo Administration Committee."

[8]  Complaint, ¶ 24.

[9]  Exhibit 1, Chad Ryan Affidavit, Ex. B.  *See* Complaint, ¶ 23.  The Court may properly consider the exhibits attached to Mr. Ryan's Affidavit because the documents are referred to in the complaint.  *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 514 (6th Cir. 1999).

[10]  Complaint, ¶¶ 25 and 29.

he had exhausted his administrative remedies and that he had the right to file suit.[11]   PepsiCo

further explained:

> Under the terms of the Plan, any claim or action brought in
> connection with the Plan by a representative on your behalf shall
> only be brought or filed in the United States District Court for the
> Southern District of New York.  In addition, any claim for wrongful
> denial of plan benefits must be brought within two years after the
> cause of action accrues.  Please see the administrative information
> section of the Plan's summary plan description.[12]

On November 13, 2012, Plaintiff filed this suit.  He asserts, *inter alia*, that the PAC's

determination was arbitrary and capricious,[13] in violation of the PEP Plan,[14] in violation of

ERISA[15] and in violation of the CBA.[16]

### Facts Regarding the PEP Plan

The PEP Plan includes the following provision:

> 8.13   Restriction of Venue.  Any claim or action filed in
> court or any other tribunal in connection with the Plan by or on
> behalf of a Petitioner (as defined in Section 8.12 above) shall only
> be brought or filed in the United States District Court for the
> Southern District of New York, effective for claims and actions
> filed on or after January 1, 2011, or effective for claims filed
> pursuant to Section 8.10 on or after January 1, 2011 in the cases of
> claims or actions that seek review of a claim filed pursuant to
> Section 8.10.[17]

---

[11]   Chad Ryan Affidavit, Ex. C.  See Complaint, ¶ 33.

[12]   Chad Ryan Affidavit, Ex. C.

[13]   Complaint, ¶ 82.

[14]   Complaint, ¶ 83

[15]   Complaint, ¶ 84.  ERISA refers to the Employee Retirement Income Security Act of 1974.

[16]   Complaint, ¶ 83.

[17]   C. Ryan Affidavit ,¶ 4.

3

The term "Petitioner" includes PEP Plan participants and beneficiaries.[18] Notice of § 8.13 was provided to PEP Plan participants such as Plaintiff.[19]

## Law and Argument

The venue selection clause in the PEP Plan is unambiguous and unequivocal. It is a mandatory venue selection clause rather than a permissive one.[20] It requires a participant who files any lawsuit "in connection with the Plan" after January 1, 2011 to file that action in the United States District Court for the Southern District of New York.

Plaintiff's claim is undeniably "in connection with" the PEP Plan – the entire thrust of Plaintiff's claim is to recover the pension benefits he claims he is due under the terms of the PEP Plan.[21] He bases his standing to bring Count II of the lawsuit on his status as a participant in the PEP Plan.[22] Even Count I, the claim referencing the Collective Bargaining Agreement ("CBA"), is premised upon the assertion that the PEP Plan is not drafted in the manner allegedly contemplated by the CBA. Plaintiff asserts "That Defendants executed the Hourly Pension Plan in a manner that was inconsistent with the above quoted provisions of the collective bargaining

---

[18] C. Ryan Affidavit, ¶ 4.

[19] C. Ryan Affidavit, Ex. A.

[20] *Scaglione v. Pepsi-Cola Metropolitan Bottling Co. Inc.,* No. 1:12CV01431, 2012 WL 3095342, 1 (N.D. Ohio July 30, 2012.

[21] In Count I Plaintiff acknowledges that the relief he seeks is "Monetary damages for the disability retirement benefits due Plaintiff under the terms of the Hourly Pension Plan and collective bargaining agreement from the date of his request for benefits to present." *See Ad Damnum* to Count I.

[22] Complaint, ¶ 65.

agreement."[23]  Because Plaintiff's entire cause of action is "in connection with" the PEP Plan and his claimed right to PEP Plan benefits, the forum selection clause applies.  Therefore, the Court either should dismiss Plaintiff's action or, alternatively, transfer the case to the United States District Court for the Southern District of New York.

One court already has enforced the PEP Plan's forum selection clause.  In *Scaglione v. Pepsi-Cola Metropolitan Bottling Co. Inc.*, No. 1:12CV01431, 2012 WL 3095342, 1 (N.D. Ohio July 30, 2012), the Court dismissed the plaintiff's claim because she had failed to file the action in the Southern District of New York.  The PepsiCo, Inc. Disability Plan includes a substantively similar forum selection clause as the PEP Plan.  *See Rodriguez v. PepsiCo Long Term Disability Plan*, 716 F.Supp.2d 855, 857 (N.D. Cal. 2010).  In *Rodriguez* the Court also enforced the clause and transferred the case to the Southern District of New York over the strenuous objection of the participant.

The venue selection clause in the PEP Plan is not novel.  For instance, both the Xerox Corporation Retirement Income Guarantee Plan and the Xerox Corporation Long Term Disability Income Plan include similar venue selection clauses.  Consistently, the courts have enforced the forum selection clauses in both plans.  *Testa v. Becker*, No. 10-638-GHK, 2010 WL 1644883 (C.D. Cal. April 22, 2010); *Laasko v. Xerox Corp.* 566 F.Supp.2d 1018, 1024 (C.D. Cal. 2008)[24]; *Bernikow v. Xerox Corp. Long-Term Disability Income Plan*, No. CV-06-2612 RGK SHX, 2006

---

[23]  Complaint, ¶ 58.

[24]  In *Laasko* (when spelled correctly, Laakso), the plaintiff filed a motion for interlocutory appeal, reconsideration and stay.  Judge Guilford denied the motion by Order dated August 14, 2008, a copy of which is attached hereto as Exhibit 2.  Laakso then filed with the United States Court of Appeals for the Ninth Circuit a Petition for Writ of Mandamus which the parties fully briefed.The Ninth Circuit denied the petition on February 24, 2009.  A copy of the Ninth Circuit Order is attached hereto as Exhibit 3.

WL 2536590 (C.D. Cal. Aug. 29, 2006) and *Klotz v. Xerox Corp.*, 519 F.Supp.2d 430 (S.D. N.Y. 2007).

Other courts from across the country, including the Eastern District of Michigan, have likewise enforced similar venue provisions included in a multitude of ERISA plans. *Conte v. Ascension Health*, No. 11-12074, 2011 WL 4506623 (E. D. Mich. Sept. 28, 2011)(Judge P. J. Duggan); *Drapeau v. Airpax Holdings, Inc. Severance Plan*, No. 11-64 (DWF/JSM), 2011 WL 3477082 (D. Minn. Aug. 9, 2011); *Smith v. Aegon USA, LLC*, 770 F.Supp.2d 809 (D. Wa. Va. 2011); *Williams v. CIGNA Corp.*, No. 5:10-CV-00155, 2010 WL 5147257 (W.D. Ky. Dec. 13, 2010); *Angel Jet Services, L.L.C. v. Red Dot Building Systems' Employee Ben. Plan*, No. CV-09-2123-PHX-GMS, 2010 WL 481420, 2 (D.Ariz. Feb. 8, 2010); *Suthar v. Eastman Kodak Company*, Case No. 2:09-cv-01005-JHH (N.D. Ala. July 20, 2009);[25]*Sneed v. Wellmark Blue Cross and Blue Shield of Iowa*, No. 1:07-CV-292, 2008 WL 1929985, 2 (E.D. Tenn. April 30, 2008); *Cent. States, Se. & Sw. Areas Pension Fund v. O'Brien & Nye Cartage Co.*, No. 06 C 4988, 2007 WL 625430, at 3 (N.D. Ill. Feb. 22, 2007); *Schoemann ex rel. Schoemann v. Excellus Health Care Program, Inc.*, 447 F.Supp.2d 1000, 1007 (D. Minn. 2006); *Rogal v. Skilstaf, Inc.*, 446 F.Supp.2d 334, 338 (E.D. Pa. 2006). *See, also, Mozingo v. Trend Personnel Services*, No. 10-4149-JTM, 2011 WL 3794263 (D. Kan. Aug. 25, 2011).

That the courts have enforced venue selection clauses included in ERISA plans is not surprising. The Supreme Court repeatedly has affirmed its commitment to enforcing such venue selection clauses. *See Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991); *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). *See, also*, *E. & J. Gallo Winery v. Andina Licores S.A.* 446 F.3d 984, 992 (9th Cir. 2006). Indeed, the Supreme Court has made clear that forum

---

[25] A copy of this opinion is attached as Exhibit 4.

selection clauses are to be enforced even if included in a contract of adhesion. *Shute*, 499 U.S. at 593-94. The party opposing the forum selection clause bears the heavy burden of showing that the clause should not be enforced. *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995); *Scaglione, supra.*, at * 1.

Nothing in ERISA prohibits venue selection clauses. As the *Rodriguez*[26], *Testa*[27], *Klotz*[28], *Angel Jet*[29], *Williams*[30] and *Smith*[31] courts acknowledged, if Congress had intended to prohibit venue selection clauses in ERISA plans, it could have expressly prohibited such clauses. It did not.[32]

When enforcing a forum selection clause, federal courts are to consider (1) whether the clause was obtained by fraud, duress or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust. *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). Every district court within the Sixth Circuit has applied those factors and determined that the forum selection clauses in the ERISA plans should be enforced. *See Conte, supra.; Williams, supra.; and Sneed, supra.*

---

[26]   716 F.Supp.2d at 861.

[27]   2010 WL 1644883 at *5.

[28]   519 F.Supp.2d at 435-36.

[29]   2010 WL 481420 at *1.

[30]   2010 WL 5147257 at *4.

[31]   770 F.Supp.2d at 812.

[32]   Forum selection clauses may also be upheld when the plan participant originally had no knowledge of the clause. *See Laasko*, at 1024 and *Angel Jet* at *2. In any event, notice and publication of the forum selection clause was made in this case. *See* C. Ryan Affidavit, ¶ 5.

These courts (as have the courts outside the Sixth Circuit), have found that the inclusion of forum selection clauses in ERISA plans is not oppressive or unconscionable or beyond the reasonable expectations of a reasonable person. *See Sneed, supra.*, at * 3. And although in each of these cases the plaintiffs asserted that it would be burdensome for them to prosecute their lawsuits in distant states, the district courts consistently rejected those arguments, noting that ERISA cases are generally decided upon summary judgment upon review of the administrative record so that travel to a new forum is not required.[33] *See Conte, supra.* at *4; *Williams, supra.* at *6; *Sneed, supra* at *3. In *Testa, supra., Laasko, supra., and Bernikow, supra.*, the plaintiffs claimed to be totally disabled, but the courts ordered their cases transferred from California to New York.

Federal courts have not only enforced forum selection provisions in ERISA plans that required the participants to file suit in a particular district court, they even have enforced such clauses that required ERISA participants to pursue their claims in arbitration rather than in state or federal court.[34] *See, e.g.,Chappel v. Laboratory Corp. of America*, 232 F.3d 719, 725 (9th Cir. 2000); *Williams v. Imhoff*, 203 F.3d 758, 767 (10th Cir. 2000); *Kramer v. Smith Barney*, 80 F.3d 1080, 1084 (5th Cir. 1996); *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1119 (3rd Cir. 1993); *Bird v. Shearson Lehman/American Express, Inc.*, 926 F.2d 116, 119-20 (2nd Cir. 1991); *Arnulfo P. Sulit, Inc. v. Dean Witter Reynolds, Inc.*, 847 F.2d 475, 478 (8th Cir.

---

[33] Plaintiff asserts that the PAC's determination was arbitrary and capricious. When the arbitrary and capricious standard of review applies, the courts limit their review to the administrative record. *See Jones v. Metropolitan Life Ins. Co.*, 385 F.3d 654 (6th Cir. 2004); *Green v. Hartford Life and Acc. Ins. Co.*, No. 1:09-cv-1061, 2010 WL 2651300 (W. D. Mich. July 1, 2010).

[34] An arbitration provision is a forum selection clause. *SeeVimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533-34 (1995); *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 289 (1995).

1988); *Maroney v. Triple ""R"" Steel, Inc.*, No. 05-C-1249, 2005 WL 1950404, 4 (N.D. Ill. Aug. 11, 2005). These courts could not have so ruled if ERISA prohibited venue selection clauses.[35]

The venue selection clause in this case is less onerous than an arbitration provision that requires a participant/beneficiary to give up his right to have his claim heard and decided by an Article III judge sitting in federal court. Under the PEP Plan, the Plaintiff retains his right to proceed in federal court and to have a federal judge decide his claim. He also retains his right to have the Federal Rules of Civil Procedure and the Federal Rules of Evidence apply to his claim. In arbitration he would have neither of these protections.

The venue selection clause in the PEP Plan has several important advantages that work to the benefit of all PEP Plan participants and beneficiaries. As a result of this clause, one division of one federal court will oversee the administration of these plans. This familiarity will allow the court to better assure the uniform administration of the plan; the risk of conflicting directives from different district courts or even different circuit courts is reduced if not eliminated. *See Laasko, supra* at 1023 and *Klotz, supra*, at 436. In *Conte, supra.*, Judge Duggan agreed that to have all claims regarding an ERISA plan litigated in one forum was important and explained:

> According to Defendants, Ascension operates in twenty states and the District of Columbia. (Defs.' Br. in Supp. of Mot. ¶ 1.) Thus, presumably, the plan's participants and beneficiaries are citizens of at least twenty-one locals and, absent a forum selection clause, Defendants potentially could be subject to suit in numerous jurisdictions. Second, the forum selection clause removes any question about where lawsuits should be filed, thereby avoiding litigation concerning this question. Finally, because it presumably is more cost effective for Defendants to litigate lawsuits in

---

[35] In *Williams v. CIGNA Corp.*, supra at *4, the court, citing *Sneed, supra*, explained, "Since the Sixth Circuit has upheld arbitration clauses contained in ERISA plans, *Simon v. Pfizer Inc.*, 398 F.3d 765, 773 (6th Cir. 2005), this Court agrees that '[i]f a party can mandate the procedure by which a decision is reached, there is no reason to believe the forum where the decision is made is of greater significance'."

> Ascension's home state, those savings can be passed along to the
> plan itself.

2011 WL 4506623 at *4; *see, also, Scaglione, supra.*, at * 1.  In *Rodriguez, supra.*, the court held,

"Furthermore, limiting claims to one federal district court encourages uniformity in the decision

interpreting that plan, which furthers ERISA's goal of enabling 'employers to establish a uniform

administrative scheme so that plans are not subject to different legal obligations in different

States'."  716 F.Supp.2d at 861.  This uniformity will benefit plan participants and beneficiaries

who will have the advantage of one court's consistent oversight of plan administration.[36]

Efficiency results when the plan administrator can conform his administration to the dictates of

the judges sitting in one courthouse rather than a multitude of judges sitting in a wide variety of

jurisdictions.  And as Judge Duggan found, allowing the PEP Plan to reduce costs by defending

themselves in one jurisdiction where the plan is administered will also benefit all participants and

beneficiaries.  In *Carnival Cruise Lines, Inc., supra, at* 593-594 the Supreme Court specifically

noted that these factors supported the enforcement of the venue selection clause. *See, also,*

*Monsanto Co. v. McFarling*,  302 F.3d 1291, 1295 (Fed. Cir. banc 2002).

The courts have not allowed a party to circumvent a forum selection clause by artful

pleading.  For instance, when a plaintiff has attempted to assert his claim in tort rather than in

breach of contract, hoping to avoid the effect of the forum selection clause in his contract, the

courts have not allowed such a tactic to succeed. *See, e.g., Lambert v. Kysar*, 983 F.2d 1110 (1st

Cir.1993); *Bagg v. HighBeam Research, Inc.,* 862 F.Supp.2d 41, 45 (D. Mass. 2012); *Terra*

*Intern., Inc. v. Mississippi Chemical Corp.* 922 F.Supp. 1334, 1378 (N.D. Iowa 1996); *Weidner*

*Communications, Inc. v. Faisal,* 671 F.Supp. 531, 537 (N.D. Ill. 1987).

---

[36]Uniform administration is one of the important goals of ERISA. *See Egelhoff v. Egelhoff,* 532 U.S.
141, 148 (2001).

Plaintiff here may be engaging in artful pleading by attempting to circumvent the PEP Plan's forum selection clause by citing the CBA in Count I. But it is clear from the face of Count I that even Plaintiff's purported CBA claim is "in connection with" the PEP Plan. The Court may determine the merit (or, more precisely, the lack thereof) of Count I only by examining the controlling PEP Plan documents, determining what the PEP Plan provides and ascertaining how it has been interpreted and administered in this case. The necessity of these actions by the Court make clear that Plaintiff's Count I is inextricably connected to the PEP Plan. Because the resolution of Plaintiff's Count I is "in connection with," and indeed depends upon, the Court's construction of the PEP Plan, the forum selection clause applies both to Count I and Count II. *See Manetti–Farrow, Inc. v. Gucci Am., Inc.,* 858 F.2d 509 (9th Cir. 1988); *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 922 F.Supp. 1334, 1378 (N.D. Iowa, 1996).

Moreover, the CBA makes clear that the PEP Plan's forum selection clause is applicable to Plaintiff. The CBA provides:

> To the extent the specific provisions above do not modify generally applicable Hourly Plan provisions, all such generally applicable provisions shall apply to this group of employees.[37]

Nothing in the CBA modifies, nullifies or contravenes in any way the PEP Plan's forum selection clause. Moreover, courts have upheld the validity and enforceability of forum selection clauses in collective bargaining agreements. *See Dist. 1-PCD, MEBA vs. Trinidad Corp.*, 583 F.Supp. 262 (S.D. N.Y. 1984) and *Chicago Bears Football Club v. Haynes*, 816 F.Supp.2d 534 (N.D. Ill. 2011). Thus, the forum selection clause applies to Plaintiff.

---

[37] Exhibit B to Plaintiff's Complaint at p. 35 of 43.

## Conclusion

The Court, pursuant to 28 U.S.C. § 1406(a), should dismiss this action without prejudice, leaving Plaintiff free to refile his suit in the United States District Court for the Southern District of New York if he wishes. Alternatively, the Court should transfer this case to the Southern District of New York.

**THOMPSON COBURN LLP**

By: ___*/s/ Richard J. Pautler, Esq*___
       Richard J. Pautler
       One US Bank Plaza – 28th Floor
       St. Louis, MO 63101
       (314) 552-6470
       (314) 552-7470 (fax)
       rpautler@thompsoncoburn.com

and

**STROBL & SHARP, PC**

By: ___*/s/ Henry J. Andries, Jr.*___
       Henry J. Andries, Jr.
       300 East Long Lake Road Suite 200
       Bloomfield, Hills, MI 48304-2376
       (248) 540-2300
       (248) 645-2690
       handries@stroblpc.com

Attorneys for Defendants

12

## CERTIFICATE OF SERVICE

  The undersigned counsel certifies that on the 17th day of December, 2012 a copy of the foregoing was served by operation of the Court's electronic filing system upon:

Victor J. Mastromarco, Jr.
1024 N. Michigan Ave.
Saginaw, MI 48602

        */s/ Henry J. Andries, Jr.*

J:\DOCS\112026\001\PLDG\SB395907.DOC

13

# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| **GREG PRICE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:12-cv-15028-TLL-CEB** |
| | ) | |
| **PBG HOURLY PENSION PLAN** | ) | |
| | ) | **Hon. Thomas Ludington** |
| **And** | ) | |
| | ) | |
| **BOTTLING GROUP, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

## AFFIDAVIT OF CHAD RYAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER

I, CHAD RYAN, after first being duly sworn upon my oath, state as follows:

1.     I am beyond the age of 21 and I make this affidavit upon personal knowledge.

2.     I am the Director, Retirement Plans, PepsiCo, Inc. and a member of the PepsiCo Administration Committee ("PAC").

3.     In June 2010, the PBG Hourly Pension Plan ("PBG Plan") referenced by Plaintiff in his Complaint was merged into the PepsiCo Hourly Employees Retirement Plan ("PEP Plan").

4.     The PEP Plan includes the following provision:

8.13   <u>Restriction of Venue</u>. Any claim or action filed in court or any other tribunal in connection with the Plan by or on behalf of a Petitioner (as defined in Section 8.12 above) shall only be brought or filed in the United States District Court for the Southern District of New York, effective for claims and actions filed on or after January 1, 2011, or effective for claims filed pursuant to Section 8.10 on or after January 1, 2011 in the cases of claims or actions that seek review of a claim filed pursuant to Section 8.10.

The term "Petitioner" as used in § 8.13 includes participants of the PEP Plan such as Plaintiff.

5.      Notice and publication of the merger of the PBG Plan into the PEP Plan and notice of the addition of the § 8.13 to the PEP Plan was made through Exhibit A attached hereto.

6.      Exhibit B attached hereto is a true and accurate copy of the PAC's July 15, 2010 final denial letter regarding Plaintiff's claim for benefits.

7.      Exhibit C attached hereto is a true and accurate copy of the PAC's December 21, 2011 letter to Plaintiff.

STATE OF NEW YORK )

) ss

COUNTY OF WESTCHESTER )

_Chad Ry_____

Chad Ryan

Subscribed and sworn to before me this _13_ th day of December, 2012.

_Kimberly K. Brackman_____

Notary Public

My Commission expires: _June 7, 2014_

KIMBERLY K. BRACKMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BR6223268  _westchester_
Certificate Filed in ~~Orange~~ County
Qualified in ~~Westchester County~~  _orange_
My Commission Expires June 07, 20_14_

- 3 -



December 2010

### Important Notice Regarding Changes to the
### PepsiCo Hourly Employees Retirement Plan
---
### Summary of Material Modifications

This Notice is a summary of material modifications to the PepsiCo Hourly Employees Retirement Plan (the "Plan"). This Notice amends the summary plan descriptions ("SPD") for the Plan as well as any other documentation that the Plan Administrator determines applies to you, including the SPD for the PBG Hourly Pension Plan. This Notice describes only material changes in the Plan and the SPDs. This Notice should be read together with your SPD. You should keep this Notice together with your SPD and other plan documentation. If you need an additional copy of a pension plan SPD, you may order a copy by calling The PepsiCo Savings and Retirement Center at Fidelity at 1-800-632-2014.

### Plan Mergers

Effective June 14, 2010 (the "Merger Date"), the PBG Hourly Pension Plan (the "PBG Plan") and the PepsiAmericas, Inc. Hourly Pension Plan (the "PAS Plan") merged into this Plan. The benefit structure for employees in the Pepsi Beverages Company ("PBC") will continue to be different than it is for other members of the PepsiCo Organization. The transfer rules in Article III of the Plan do not apply for transfers within the merged Plan. All benefits accrued by participants in the PBG Plan and PAS Plan prior to the Merger Date will now be paid under this Plan

### Rules Affecting Employees Who Have Changes in Employment Status or Location

If a non-union hourly employee who is accruing benefits under the PBG formula under the Plan as a "grandfathered participant" (that is, an employee who is not an account balance participant or otherwise accruing benefits under the PBG formula under the terms of a collective bargaining agreement) transfers to a position that is not eligible for continued accruals as an hourly "grandfathered participant" under the PBG formula under the Plan (such as a salaried position or an hourly non-PBC position) on or after January 1, 2011 and later returns to a non-union hourly "grandfathered participant" position, the employee will again be treated as a grandfathered participant only if the participant's return is within one year. In addition, a "grandfathered participant" who transfers to a non-union hourly position within PBC will continue to be eligible for continued accruals as an hourly "grandfathered participant."

If an employee is eligible for a multiplier formula under the Plan as provided in a collective bargaining agreement, and the employee's status is changed to non-union because his or her union is decertified, the employee will continue to be eligible for the multiplier formula under the Plan after the union is decertified but only to the extent the employee remains continuously employed as an hourly non-union PBC employee. In the event the employee transfers to another position (for example, a salaried or non-PBC position) and returns, within one year, to an hourly non-union PBC position, the employee will again be treated as eligible for the PBG multiplier formula under the Plan.

Participation for collectively bargained employees will be determined by the terms of the applicable collective bargaining agreement.

The above rules are subject to the Plan's generally applicable eligibility and break in service rules, which are described in the SPD.



1

## Vesting

The following changes are being made to the Plan's vesting rules:

- You will become 100% vested in your benefit under the Plan if you die or become totally and permanently disabled on or after January 1, 2011 while an employee of the PepsiCo Organization or during a military leave of absence. (See also the additional provisions for military service discussed below.)

- If you have an amount credited to an account balance under the Plan, you will be 100% vested in your entire benefit under the Plan after 3 years of vesting service.

These changes are in addition to the Plan's existing vesting rules, which are described in the SPD. The rules for determining your years of vesting service are also described in the SPD.

## Eligibility for Retirement Pension

Effective January 1, 2011, if you transfer to a position within the PepsiCo Organization that makes you ineligible to continue accruing additional benefits in the Plan, you will still be eligible for a Normal, Early, Late or Disability Retirement Pension under the Plan if, at the time you finally terminate from the PepsiCo Organization, you satisfy the applicable age and service requirements for a Normal, Early, Late or Deferred Disability Retirement Pension. This is true even if you become totally and permanently disabled after you transfer to a position that makes you ineligible to continue accruing additional benefits under the Plan (however, you will not be eligible for additional Credited Service if you are not in an eligible classification when you become disabled). Previously, if you terminated employment from a position that made you ineligible to continue accruing benefits under the Plan, you were generally entitled only to a Vested Pension regardless of your age and years of service. These age and service requirements are explained in greater detail in the SPD.

## Military Service

Effective January 1, 2007, the survivors of an employee who dies while performing qualified military service with a right to reemployment under the Uniformed Service Employment and Reemployment Rights Act (USERRA) will be entitled to any benefits that the employee would have received if the employee had resumed active employment with the Company immediately prior to death. For example, you will become fully vested in your benefit under the Plan. In addition, if you were actively accruing a benefit under the Plan as of the date you began your military service, and you die on or after January 1, 2011, you will also receive benefit accruals for the period of your qualified military service.

Effective January 1, 2011, participants who receive a military disability award finding the participant to be at least 50% disabled will, upon proper notice to the Plan Administrator, be considered totally and permanently disabled for purposes of the new rule vesting participants who become totally and permanently disabled while an employee of the PepsiCo Organization or during a military leave of absence (see the discussion of the new vesting rules above).

## Pre-Retirement Survivor Spouse Coverage for Deferred Vested Participants

The Plan has been amended to provide that a deferred vested participant will be offered a choice only between the 50% pre-retirement survivor spouse coverage (with applicable coverage charges) or, with the consent of the participant's spouse, no pre-retirement survivor spouse coverage.

## New Account Balance Plan Feature for Employees of the Pepsi Beverages Company

Non-union hourly employees of the Pepsi Beverages Company, except if they are a non-union hourly employee of the former PBG entity and a "grandfathered participant" in the PBG Plan, and any union hourly employees to the extent provided for in their collective bargaining agreement are eligible for the Plan's new account balance feature (and will not be eligible for the benefit formula described in the main SPD).

Following is a summary of how the account balance feature works:

- An employee who becomes a participant in the account balance feature will have an "Account Balance," which will be credited with "Pay Credits" and "Interest Credits."

- Pay Credits will be credited on each payroll date. The amount of the Pay Credit will depend on the participant's years of service on the payroll date. Pay Credits for participants with less than 10 years of service will equal 4% of the participant's pay. Pay Credits for participants with 10 or more years of service will equal 5% of pay.

- Interest Credits will be credited on the last day of each Plan Year. Interest Credits will be determined by multiplying the Account Balance as of the last day of the immediately preceding Plan Year by the rate of interest on 30-year Treasury securities for the month of September immediately preceding the first day of the Plan Year to which the Interest Credit relates (for example, Interest Credits credited on the last day of the 2012 Plan Year will be determined by multiplying the balance of the participant's Account Balance on the last day of the 2011 Plan Year by the rate of interest on 30-year Treasury securities for the month of September 2011). If the participant's Account Balance is distributed before the last day of a Plan Year, the participant will receive a prorated Interest Credit for that year.

- A participant's Account Balance becomes 100% vested after 3 years of service, or if sooner, when the participant attains age 65, dies or becomes disabled while an employee.

- At the time of the participant's benefit commencement, the Account Balance will be converted into a monthly annuity or a lump sum payment, as determined under the rules of the Plan and elected by the participant.

A union employee will only participate in the account balance plan feature if his or her collective bargaining agreement provides for it.

Certain employee groups who accrue benefits under the PBG Plan are grandfathered under the PBG Plan's basic benefit formula and will not participate in the new account balance feature.

## New Restrictions Related to Plan's Funding Required by the Internal Revenue Code

The Plan has been amended to apply certain restrictions on benefits that are required to be included in the Plan under applicable tax laws for Plan Years beginning on and after January 1, 2008. These restrictions apply when the Plan's funding level (i.e., the ratio of the Plan's assets to its liabilities for benefits) drops below certain levels. Depending on how far the Plan's funding level drops, one or more of the following restrictions could apply: (i) the Plan could be prohibited from paying plant shutdown benefits or any similar unpredictable benefits; (ii) amendments to the Plan that increase benefit liabilities, establish new benefits, or change the rate at which benefits accrue or become vested could be prohibited; (iii) the Plan could be restricted from making lump sum benefit payments (other than small benefit cashouts); or (iv) if the Plan becomes severely underfunded, all benefit accruals under the Plan could be suspended. None of these restrictions currently apply. You will be notified if any of the restrictions become applicable.

## Claims Procedure

Claims for benefits under the Plan are made in accordance with the following (these procedures are similar to those that previously applied under the PBG Plan.

Usually, benefits are paid in the ordinary course using the forms and procedures described in your SPD. However, occasionally you may wish to file a formal claim for benefits.

The Plan Administrator, or its delegate, has the exclusive discretionary authority to construe and to interpret the plans, to decide all questions of eligibility for benefits and to determine the amount of such benefits, and its

decisions on such matters are final and conclusive. If any exercise of this discretionary authority is reviewed by a court, arbitrator, or any other tribunal, it shall be reviewed under the arbitrary and capricious standard (e.g., the abuse of discretion standard). Benefits under the Plan will be paid only if the Plan Administrator decides in its discretion that the applicant is entitled to them. The Plan Administrator has periodically exercised its authority to delegate discretionary authority in contracts, letters and plan documents to the various claims or contract administrators, insurers and trustees.

<u>Procedure for Filing a Claim</u>

This subsection sets forth the procedures that apply for filing a formal claim for retirement benefits.

To make a formal claim for retirement benefits, you must file a written claim with the Plan Administrator at the address shown in this section. If your claim for retirement benefits is denied in whole or in part, you will receive a written notification of the denial. This claim denial notice will include: (1) specific reasons why the claim was denied; (2) specific references to applicable provisions of the plan document or other relevant records or papers on which the denial is based and information regarding where you may review them; (3) an explanation of how to appeal for reconsideration of the Plan Administrator's decision, including your right to submit written comments and have them considered, your right to review, upon request and free of charge, relevant documents and other information, and your right to file suit under the Employee Retirement Income Security Act of 1974 (ERISA) with respect to any adverse determination after appeal of your claim; and (4) a description of any additional material or information necessary for you to complete your claim and an explanation of why such material or information is necessary. You will receive this denial notice within 90 days of the date the claim is received (or 180 days if special circumstances arise and you are notified in writing within the initial 90-day period of the need for an extension).

<u>Procedure for Filing an Appeal</u>

If your claim has been denied in whole or in part, you may appeal the denial by submitting a written request for review to the Plan Administrator within 60 days of the date that you receive the claim denial notice, or else you will lose your right to appeal your denial. If you do not appeal on time, you will also lose your right to file suit in court, as you will have failed to exhaust your administrative appeal rights, which is generally a prerequisite to bringing suit.

Your right to appeal a denied claim includes the opportunity for you or your legal representative to: (1) state the reasons why you feel your claim should not have been denied; (2) submit written comments, documents, additional facts and other information supporting your claim; (3) ask additional questions; (4) request to receive reasonable access (free of charge) to copies of all documents, records, and other information relevant to your claim; and (5) ask for a review that takes into account all comments, documents, records, and other information you have timely submitted, whether or not it was submitted or considered in the initial determination of your claim.

If your appeal is denied in whole or in part, you will receive written notification of the decision. Such written notification will contain the following information: (1) the specific reasons for the partial or complete denial of your claim; (2) reference to the specific plan provisions on which the benefit determination was based; (3) a statement of your right to receive, upon request and free of charge, reasonable access to and copies of all documents, records, and other information relevant to your claim; and (4) a statement of your right to bring an action under ERISA Section 502(a), as amended.

You will receive the written decision on appeal within 60 days of the date the appeal was received (or 120 days if special circumstances arise and you are notified in writing within the initial 60-day period of the need for an extension).

**Exhaustion of Administrative Remedies**

Before filing any claim for review by a court, arbitrator, or any other tribunal, a claimant must first fully exhaust all of the claimant's rights under the Plan's claims procedures by filing an initial claim and then seeking a timely appeal of any denial. A claimant who fails to request a review of a denied claim by the Plan Administrator within the permissible time period for such requests shall lose the right to seek review of the denied claim by a court, arbitrator or other tribunal.

This exhaustion requirement shall apply even if the Plan Administrator has not previously defined or established specific claims procedures that directly apply to the submission and consideration of a particular issue, matter or dispute. After you have filed your initial claim, the Plan Administrator will inform you of any specific claims procedures that will apply to your particular issue, matter or dispute, or it will apply the claims procedures above that apply to claims for benefits.

**Limitation on Claims**

Effective for claims filed on or after January 1, 2011, any claim or action that is filed against or with respect to the Plan in a court or other tribunal, by or on behalf of a participant or a beneficiary for the alleged wrongful denial of plan benefits or for the alleged interference with ERISA-protected rights, must be brought within two years after the cause of action accrues, determined as follows:

- For claims involving calculation of benefits, a cause of action accrues as of the date you receive the benefit calculation that you are challenging. In the case of actions filed in court, the cause of action shall accrue in no event earlier than your annuity starting date or the date identified to you by the Plan Administrator on which your benefits are to commence.

- For all other claims (including eligibility claims), the cause of action accrues on the date when you know or should know of the actions or events that gave rise to your claim.

Any claim or action brought after the above timeframes will be void.

**Exclusive Venue**

Any claim or action filed in a court or any other tribunal in connection with the Plan by or on behalf of a petitioner can only be brought or filed in the United States District Court for the Southern District of New York, effective for claims or actions filed on or after January 1, 2011, or in the case of claims or actions that seek review of a claim filed pursuant to the Plan's claims procedures, effective for such claims filed on or after January 1, 2011.

*This Notice and the Plan's SPDs are intended to provide a summary of the main provisions of the Plan, but these are not intended to augment rights provided under the terms of the official documents for the Plan. Nothing in this Notice makes you eligible for the Plan, or eligible for a specific level or amount of benefits, unless the official documents provide for such eligibility or benefits. Your eligibility and benefits are determined in accordance with and subject to the official documents for the Plan. No benefits will be paid or provided unless and until the Plan Administrator determines, in its sole discretion, that you are entitled to them. While PepsiCo currently intends to continue the Plan, PepsiCo reserves the right to amend, modify or terminate the Plan at any time. Nothing in this Notice should be construed as a promise or guaranty of future benefits or of any level or amount of benefits, or as a promise or guaranty of employment or future employment for any duration.*

*If you have questions about these changes, please call The PepsiCo Savings and Retirement Center at Fidelity toll-free at 1-800-632-2014, Monday through Friday, between 8:30 A.M. and Midnight Eastern Time, to speak with a Customer Service Associate.*

 **PEPSI BEVERAGES COMPANY**

July 15, 2010

Mr. Greg H. Price
8974 Garner Lane
Freeland, MI 48623

Dear Mr. Price,

This letter is written on behalf of the PepsiCo Administration Committee (the "PAC"), Plan Administrator of the PBG Hourly Pension Plan, which has been merged into the PepsiCo Hourly Employees Retirement Plan (the "Plan"). This letter is in response to your appeal for pension benefits under the Plan dated June 4, 2010. The PAC has concluded its review of your appeal under the   The purpose of this letter is to provide you with the PAC's findings and final determination on your appeal.

In your pension benefit appeal you stated that you believe you "*meet all criteria in being able to collect "Early Pension" due to my career ending injury that I sustained while working at Pepsi.*" You are requesting back pay as well as monthly pension checks.

Upon reviewing the facts and circumstances of your appeal, the PAC has found that the previous denial dated May 24, 2010 is upheld for the reasons set forth below.

Our records indicate that you (a) were hired on April 8, 1993; (b) were determined eligible for benefits under the PBG Long Term Disability Plan effective June 27, 2007; and (c) were determined ineligible for benefits under the PBG Long Term Disability Plan effective December 1, 2007; and (d) have not returned to work at Pepsi Beverages Company.

Section 4.6(b) of the Plan describes the Requirements for an Immediate Disability Pension. I have included excerpts of the relevant portion of the section below and I have enclosed this entire section of the Plan for your records.

Section 4.6(b) Requirements for an Immediate Disability Pension: *Subject to subsection (d), a Participant who meets the requirements in (a) is entitled to an Immediate Disability Pension.*

Section 4.6(d) Timing Rule: *Unless modified by the Election described in subsection (e), subsection (b) shall apply to Participants who become Totally and Permanently Disabled before January 1, 1993 and subsection (c) shall apply to Participants who become Totally and Permanently Disabled on or after that date.*

Section 4.6(e) Election Available to Certain Employees: *notwithstanding the provisions of subsection (d), Employees who were actively employed on the date subsection (c) began to apply to the Participating Employee Group, who become Totally and Permanently Disabled*

Greg H. Price
July 15, 2010
Page 2

*after that date, and who are in a Participating Employee Group that was covered by subsection (b) on the day before subsection (c) began to apply to their Participating Employee Group, can irrevocably elect to receive the Immediate Disability Pension described in subsection (b).*

Since you were not deemed Totally and Permanently Disabled before January 1, 1993, you are not eligible for the Immediate Disability Pension according to Section 4.6(d). Additionally, since you were not employed prior to January 1, 1993, the date when subsection (c), the Deferred Disability Pension provision began to apply, you are not eligible for the Immediate Disability Pension according to Section 4.6(e).

As a result, the PAC has determined that you are ineligible for an Immediate Disability Pension.

Based on the Social Security Award letter you provided, you are eligible to receive Credited Service towards a Deferred Disability pension as described in Section 4.6(c) as long as you remain eligible for disability benefits under Social Security. If you remain disabled under Social Security, you can commence the Deferred Disability pension at 65, or as early as 55 on an actuarially reduced basis.

This is the PAC's final decision. You have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). In addition, upon written request and free of charge, you have the right to reasonable access or to receive copies of all documents, records and other information relevant to your claim.

Regards,

Donna Fritzsche
Manager, Retirement Plans

cc:     PepsiCo Administration Committee
        PBG Savings and Retirement Center at Fidelity



Pepsi Beverages Company, a division of PepsiCo
One Pepsi Way, Somers, NY 10589   www.pepsico.com

Via Certified Mail

December 21, 2011

Mr. Greg H. Price
8974 Garner Lane
Freeland, MI 48623

Dear Mr. Price,

This letter is in response to your post appeal dated September 22, 2011 for pension benefits under the PBG Hourly Pension Plan, which has been merged into the PepsiCo Hourly Employees Retirement Plan (the "Plan"). I am providing this written response directly to you because we never received written authorization to provide information to Attorney Kevin J. O'Neill who had sent us a letter regarding your benefits.

In your post appeal benefit letter you stated that you believe you are requesting back pay as well as reinstatement of monthly pension checks. You stated that you are entitled to this according to the Teamsters Union Local 486 contract.

You have not provided any new information in your post appeal to support your claim. You filed a claim for benefits which was denied in a letter dated 5/24/2010; a copy of the letter is enclosed. You appealed that decision which was denied on behalf of the PepsiCo Administrative Committee ("PAC") in letter dated July 15, 2010. A copy of the PAC's appeal denial letter dated July 15, 2010 is enclosed for your reference. I am providing you the following information regarding the appeal denial determination made by the PAC.

Our records indicate that you (a) were hired on April 8, 1993; (b) were determined eligible for the PBG Long Term Disability Plan benefits June 27, 2007; and (c) have not returned to work at Pepsi Beverages Company.

As, Ms. Fritzsche explained in the appeal denial letter, *"Since you were not deemed Totally and Permanently Disabled before January 1, 1993, you are not eligible for the Immediate Disability Pension according to Section 4.6(d). Additionally, since you were not employed prior to January 1, 1993, the date when subsection (c), the Deferred Disability Pension provision began to apply, you are not eligible for the Immediate Disability Pension according to Section 4.6(e)"*. The enclosed denial letter contains the referenced excerpts from the Plan.



EXHIBIT

C

December 21, 2011
Price, Greg H., Page 2 of 2

As long as you remain eligible for disability benefits under Social Security, you are instead eligible for the Deferred Disability Pension and will continue to receive Credited Service towards this pension benefit. If you remain disabled under Social Security, you can commence the Deferred Disability pension as early as the first of the month after age 55 on an actuarially reduced basis by calling the PepsiCo Savings and Retirement Center at Fidelity at 1-800-632-2014.

You have exhausted your administrative remedies under the Plan and have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act of 1974 ("ERISA"). In addition, upon written request and free of charge, you have the right to reasonable access or to receive copies of all documents, records and other information relevant to your claim. Under the terms of the Plan, any claim or action brought in connection with the Plan by a representative on your behalf shall only be brought or filed in the United States District Court for the Southern District of New York. In addition, any claim for wrongful denial of plan benefits must be brought within two years after the cause of action accrues. Please see the administrative information section of the Plan's summary plan description.

Sincerely,

Preeti Beri
Retirement Plans Analyst

cc:    PepsiCo Legal, S. DeWalt

# EXHIBIT 2

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | SACV 08-0489 AG (MLGx) | Date | August 18, 2008 |
|---|---|---|---|

| Title | JANICE L. LAAKSO V. XEROX CORPORATION, ET AL. |
|---|---|

| Present: The Honorable | ANDREW J. GUILFORD | |
|---|---|---|
| Lisa Bredahl | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     ORDER DENYING MOTION FOR INTERLOCUTORY APPEAL, RECONSIDERATION, AND STAY

Before the Court is the Motion of Plaintiff Janice Laakso ("Plaintiff") Petitioning the Court to Amend its Order to Include the Certification Required Permitting Plaintiff to File and Interlocutory Appeal or in the Alternative Request for Reconsideration Pursuant to Federal Rule of Civil Procedure 59(e); Request for Immediate Stay of Order Transferring this Case to the United States District Court, Western District of New York, Rochester Division, Pending Appeal ("Motion"). After considering the arguments submitted by both parties, the Court finds this matter appropriate for decision without oral argument. Accordingly, the hearing scheduled for August 18, 2008 is hereby VACATED. The Motion is DENIED in its entirety.

To the extent that this Motion requests that the Court amend its July 18, 2008 Order, the request is DENIED. Plaintiff has failed to show that there is "substantial ground for difference of opinion" about the holdings in the Court's Order, as required by 28 U.S.C. § 1292(b), and the Court will not certify an interlocutory appeal for this matter.

To the extent that this Motion requests that the Court reconsider its Order, the request is DENIED, because Plaintiff has failed to satisfy the local rule requirements for a motion for reconsideration. Plaintiff has failed to show: (a) a material difference in fact or law from that presented to the Court before, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision. Local Rule 7-18.

Finally, to the extent that this Motion requests a stay pending appeal, that request is DENIED.

|  | : | 0 |
|---|---|---|
|  | Initials of Preparer | lmb |

# EXHIBIT 3

**FILED**

UNITED STATES COURT OF APPEALS

FEB 24 2009

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| In re: JANICE I. LAASKO. | No. 08-73797 |
| | D.C. No. 8:08-CV-00489-AG<br>Central District of California,<br>Santa Ana |
| JANICE I. LAASKO,<br><br>            Petitioner,<br><br>    v.<br><br>UNITED STATES DISTRICT COURT<br>FOR THE CENTRAL DISTRICT OF<br>CALIFORNIA,<br><br>            Respondent,<br><br>XEROX CORPORATION LONG-TERM<br>DISABILITY INCOME PLAN, also<br>known as Xerox Medical Care and Long<br>Term Disability Income plan; et al.,<br><br>            Real Parties in Interest. | ORDER |

Before:  KOZINSKI, Chief Judge, HAWKINS and GOULD, Circuit Judges.

Petitioner has not demonstrated that this case warrants the intervention of

this court by means of the extraordinary remedy of mandamus. *See Bauman v.*

KB/MOATT

*United States Dist. Court*, 557 F.2d 650 (9th Cir. 1977).  Accordingly, the petition

is denied.

# EXHIBIT 4

FILED

2009 Jul-20  AM 11:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| SHAMAL L. SUTHAR, | ) | |
| PLAINTIFF, | ) | |
| VS. | ) | **2:09-cv-1005-JHH** |
| EASTMAN KODAK COMPANY; and GLOBAL BENEFITS ORGANIZATION EASTMAN KODAK COMPANY, | ) ) | |
| | ) | |
| DEFENDANTS. | | |

## MEMORANDUM OPINION

The court has before it Defendants' Motion to Dismiss (Doc. #4) or, in the Alternative, to Transfer Venue filed June 15, 2009.  Having been fully briefed by the parties (docs. #4, 10, 11), the motion is now under submission pursuant to this court's order (doc. #7) of June 16, 2009.

## I.    Introduction

On May 21, 2009, Plaintiff Shamal L. Suthar filed a Complaint in this court seeking equitable estoppel/declaratory relief (Count One) and alleging violation of the Employee Retirement Income Security Act ("ERISA") under § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) (Count Two).  In lieu of an Answer, defendants Eastman Kodak Company, Global Benefits Organizations Eastman Kodak Company

(hereinafter collectively referred to as "Kodak") timely filed the pending Motion to Dismiss (Doc. #4) or, in the Alternative, to Transfer Venue, alleging that pursuant to FED. R. CIV. P. 12(b)(3) and 28 U.S.C. § 1406(a),[1] the Complaint should be dismissed or transferred.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(3) provides for the defense of improper venue by motion.  See FED. R. CIV. P. 12(b)(3).  In addition,

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

28 U.S.C. § 1404(a).  The Eleventh Circuit has held that motions to dismiss on the basis of choice-of-forum and choice-of-law clauses are properly brought pursuant to Federal Rule of Civil Procedure 12(b)(3) as motions to dismiss for improper venue. See Lipcon v. Underwriters at Lloyd's, London, 148 F.3d 1285, 1290 (11th Cir. 1988).

When a Federal Rule of Civil Procedure 12(b)(3) motion to dismiss for improper venue is based on a forum selection clause, the plaintiff has the burden of showing that venue is proper. See M/S Bremen v. Zapata Off-Shore Co., 407 U.S.

---

[1] Defendants' Memorandum of Law (doc. #4, Exh. 6) in Support of Motion to Dismiss or, in the Alternative, to Transfer Venue seems to change course and argues that change of venue is appropriate under 28 U.S.C. § 1404(a).  (See Doc. #4, Exh. 6 at 7-8; see also Doc. #11 at 7).

1, 18 (1972); see also 2215 Fifth St. Assocs. v. U Haul Int'l. Inc., 148 F. Supp.2d 50, 54 (D. D.C. 2001).   The court must resolve factual conflicts in the parties' submissions in favor of the plaintiff, and may look to facts outside the complaint to determine whether venue is proper.  See Lobo v. Celebrity Cruises, Inc., 426 F. Supp.2d 1296, 1304 (S.D. Fla. 2006).  Where there is no evidentiary hearing, courts allow a plaintiff to carry the burden by establishing facts, taken as true, that establish venue.  See Kozial v. Bombardier-Rotax GmbH, 129 Fed. Appx. 543 (11th Cir. Fla. 2005) and Madara v. Hall, 916 F.2d 1510, 1514 (11th Cir. 1990).  All undisputed facts in the complaint are accepted as true and where facts are contested the court is to draw all reasonable inferences in favor of the plaintiff.  See id.

## III.   RELEVANT FACTS

Plaintiff Shamal Suthar was an employee of Kodak from 1966 until 1991.  (See Compl. ¶ 5; see also Doc. #10 at 1-2, ¶ 1).  In 1991, Kodak offered certain employees a Golden Parachute retirement package; employees who accepted that package would be eligible to receive a lump sum payment and would also receive covered health insurance for the employee and his or her spouse for their lifetime.  (See Compl. ¶ 5; see also Doc. #10 at 1-2, ¶ 1).  Employees only had a certain amount of time to accept the Golden Parachute plan, and those who did not were subject to a different retirement plan.  (See Compl. ¶ 5; see also Doc. #10 at 1-2, ¶ 1).

In 1992, Suthar voluntarily retired from Kodak.  (See Doc. #4, Exh. 6 at 1).
"For a significant number of years, Kodak treated Suthar as being retired under the
Golden Parachute retirement plan and paid Suthar benefits in accordance with the
terms of the Golden Parachute plan."  (See Compl. ¶ 8; see also Doc. #10 at 3, ¶ 2).
Suthar's main contention in this action is that he retired pursuant to the terms of a
special retirement plan under which his healthcare benefits could not be changed, yet
those benefits have now been changed.  (See Doc. #10 at 3, ¶ 3).

Kodak admits that Suthar retired under the Resource Redeployment and
Retirement ("RRR") program which offered eligible employees enhanced pension
benefits as set out in an appendix to the plan document for the Kodak Retirement
Income Plan ("KRIP").  (See Doc. #4, Exh. 6 at 1).  Kodak further states that RRR
did not provide medical or other welfare benefits, but employees who retired under
RRR and were otherwise eligible for retiree medical benefits under Kodak's medical
plans in effect at that time, the Kodak Basic Health Care Plan ("KBHCP") and the
Kodak Extended Health Care Plan ("KEHCP"), received benefits subject to the terms
of those plans.  (See Doc. #4, Exh. 6 at 1-2).  For the past "few" years, however,
Suthar's medical benefits have been provided under the Kodak Medical Assistance
Plan ("KMAP").  (See Doc. #4, Exh. 6 at 2).  Suthar does not dispute that distinction,
instead noting that the terms of his benefits were changed  and questioning the

permissibility of such a change.  (See Doc. #10 at 3, ¶¶ 2, 4; see also Compl. ¶¶ 3, 8,

9).  The merits of the claims and defenses are not relevant to the pending motion.

## IV.   DISCUSSION

Having set out the procedural framework and relevant facts, the court must now

determine whether the forum-selection clause at issue in this case passes muster.  The

starting point for the analysis, of course, is the presumption that the clause is valid

and enforceable.  See Lipcon, 148 F.3d at 1291.  This presumption may be overcome

by a "strong showing" that enforcement would be unjust, unfair, or unreasonable

under the circumstances.  See id. at 1295-96.

Under the KMAP, KBHCP, and KEHCP plans, the forum selection clauses are

identical:

> **Forum.**  For purposes of commencing an Action against
> any Plan Party, the Plan is deemed to be administered in
> Rochester, New York, any alleged breach is deemed to
> have occurred in Rochester, New York, and each Plan
> Party is deemed to reside in Rochester, New York.  No
> Action may be commenced against any Plan Party other
> than in the Federal Court for the Western District of New
> York located in Rochester, New York.   The Plan
> Administrator shall have the complete and exclusive
> discretion to waive this requirement with respect to any
> Plaintiff.

(See Obstarczyk Decl. ¶¶ 7, 8; see also Exhs. B, C, D to Obstarczyk Decl. at Section

11.6(d)).  While the language is a little different for the KRIP plan, its effect is the

same:

> For purposes of commencing an Action against any Plan
> Party, the Plan is deemed to be administered in Rochester,
> New York, any alleged breach is deemed to have occurred
> in Rochester, New York, and each Plan Party is deemed to
> reside in Rochester, New York. No Action may be
> commenced against any Plan Party other than in the
> Federal Court for the Western District of New York located
> in Rochester, New York. KRIPCO shall have the complete
> and exclusive discretion to waive this requirement with
> respect to any Plaintiff.

(See Obstarczyk Decl. ¶ 9; see also Exh. A to Obstarczyk Decl. at Section 13.03(e)(4).

These forum selection clauses are unambiguous and unequivocal, mandatorily directing participants to bring any claims against the relevant Plan in the Federal District Court in Monroe County, New York. The Eleventh Circuit has consistently enforced forum selection clauses, such as the ones set out above, in agreements under which a plaintiff claims benefits. See Arthrex v. Orthpgen Aktiengesellschaft, 250 Fed. Appx. 293 (11th Cir. 2007) (plaintiffs were equitably estopped from disavowing the forum selection clause contained in an agreement under which they were claiming benefits); see also Klotz v. Xerox Corp., 518 F. Supp.2d 430 (S.D. N.Y. 2007). Moreover, the Supreme Court has repeatedly recognized forum selection clauses as legitimate and has required deference in their enforcement. See Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585 (1991); see also M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) and Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22 (1988) (affirming the Eleventh Circuit's decision that venue is a matter of federal procedure

6

and that a forum selection clause was enforceable generally as a matter of federal law). Thus, the "heavy" burden is on plaintiff to show that enforcement of the forum selection clause would be unjust, unfair, or unreasonable under the circumstances. See Lipcon, 148 F.3d at 1295-96; see also Bremen, 407 U.S. at 1.

Plaintiff has not met that burden, making only general assertions that the forum selection clause should not be enforced because it is punitive in nature and designed to intimidate claimants from enforcing their ERISA rights. (See Doc. #10 at 8-9). Although Plaintiff states that "the intended purpose of the provisions is to make it extremely difficult and potentially expensive for any Plan participant to vindicate his or her ERISA rights" his only "evidence" of that are responsive letters from Kodak to Plaintiff's counsel reminding counsel of the applicable law. (Doc. #10 at 8-9). Such letters do not amount to a "strong showing" of attempts "to intimidate Suthar from pursuing his rights under ERISA." (Doc. #10 at 4, ¶ 12). Therefore, the forum selection clause(s) are valid and enforceable, and will be enforced here.[2]

---

[2] The enforceability of the forum selection clause(s) is further supported by the factors supporting a motion for change of venue pursuant to 28 U.S.C. § 1404(a), which provides that "for the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where the action might have been brought." Under ERISA, venue is proper "where the plan is administered, where the breach took place, or where a defendant resides or may be found." 29 U.S.C. § 1132(e)(2). In this case, plaintiff could have brought this action in the District Court for the Western District of New York, Rochester Division since that is where the Plan is administered, where the alleged breach occurred, and where defendants' principal place of business is located. And, as explained by the Eleventh Circuit, "the court should consider 'the convenience of the witnesses' and the 'interests of justice,' with a choice of forum clause 'a *significant* factor that figures *centrally* in the district court's calculus." P&S Business Mach. Inc. v. Canon, USA, Inc., 331 F.3d 804, 807 (11th Cir. 2003) (emphasis in original). As a result, the Eleventh Circuit has held that, while other factors

## V.   CONCLUSION

For the foregoing reasons, the Motion (doc. #4) to Dismiss or, in the Alternative, to Transfer Venue is due to be granted. This case is due to be transferred to the United States District Court for the Western District of New York, Rochester Division. A separate order will be entered.

**DONE** this the ___20th___ day of July, 2009.

_____
SENIOR UNITED STATES DISTRICT JUDGE

---

might conceivably militate against a transfer, "venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." Id.