# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | | |
|---|---|---|
| **GREG PRICE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 1:12-cv-15028-TLL-CEB** |
| | ) | |
| **PBG HOURLY PENSION PLAN** | ) | |
| | ) | **Hon. Thomas Ludington** |
| **And** | ) | |
| | ) | |
| **BOTTLING GROUP, LLC** | ) | |
| | ) | |
| **Defendants.** | ) | |

## SUPPLEMENTAL AFFIDAVIT OF CHAD RYAN IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR ALTERNATIVELY TO TRANSFER

I, CHAD RYAN, after first being duly sworn upon my oath, state as follows:

1.    I am beyond the age of 21 and I make this affidavit upon personal knowledge.

2.    I am the Director, Retirement Plans, PepsiCo, Inc. and a member of the PepsiCo Administration Committee ("PAC").

3.    Attached hereto as Exhibit A is a true and accurate copy of the June 14, 2010 "Merger Amendments Pepsico Hourly Employees Retirement Plan, PBG Hourly Pension Plan and PepsiAmericas, Inc. Hourly Pension Plan."

4.     Attached hereto as Exhibit B is a true and accurate copy of 32 pages of the "December 2010 Amendments to the PepsiCo Hourly Employees Retirement Plan."

5.     The plan year for the PepsiCo Hourly Employees Retirement Plan runs from January 1 to December 31.

STATE OF NEW YORK            )
                             ) ss
COUNTY OF WESTCHESTER        )


_____ *Chad Ry* _____
Chan Ryan


Subscribed and sworn to before me this 17th day of January, 2013.


_____ Kimberly K. Brachman _____
Notary Public


My Commission expires: June 7, 2014

KIMBERLY K. BRACKMAN
NOTARY PUBLIC-STATE OF NEW YORK
No. 01BR6223268 westchester
Certificate Filed in ~~Orange~~ County orange
Qualified in Westchester County
My Commission Expires June 07, 2014

## MERGER AMENDMENTS
## PEPSICO HOURLY EMPLOYEES RETIREMENT PLAN,
## PBG HOURLY PENSION PLAN AND
## PEPSIAMERICAS, INC. HOURLY PENSION PLAN

PepsiCo, Inc. ("Company") sponsors the PepsiCo Hourly Employees Retirement Plan ("PEP Plan") and, effective February 26, 2010, the Company assumed sponsorship of the PepsiAmericas, Inc. Hourly Pension Plan ("PAS Plan") and the PBG Hourly Pension Plan ("PBG Plan") in connection with the merger of PepsiAmericas, Inc. and The Pepsi Bottling Group, Inc., respectively, with and into Pepsi-Cola Metropolitan Bottling Company, Inc., a wholly-owned subsidiary of the Company.

The PEP Plan has been restated from time to time, most recently in the form of an amendment and restatement adopted January 15, 2010, which included amendments through September 30, 2009. The restated plan was further amended by amendments thereto dated December 15, 2009 to, among other things, comply with certain requirements of the Pension Protection Act of 2006, and January 15, 2010 to add a new appendix referred to as Appendix Article PBG/PAS (PBG/PAS Acquisition).

The PAS Plan has been restated from time to time, most recently in the form of an amendment and restatement effective as of January 1, 2008, a First Amendment to the restated plan to comply with certain requirements of the Pension Protection Act of 2006, a Second Amendment to, among other things, transfer sponsorship of the PAS Plan to the Company, and a Third Amendment to comply with additional requirements of the Pension Protection Act of 2006, the Worker, Retiree and Employer Recovery Act of 2008, and the Heroes Earnings Assistance and Relief Tax Act of 2008.

The PBG Plan has been restated from time to time, most recently in the form of an amendment and restatement effective as of April 1, 2009, a First Amendment to the restated plan to, among other things, transfer sponsorship of the PBG Plan to the Company, and a Second Amendment to the restated plan to update the appendices.

The Company now wishes to merge the PAS Plan and the PBG Plan with and into the PEP Plan.

NOW, THEREFORE, effective ___JUNE 14___, 2010 (the "Merger Date"), the PAS Plan and the PBG Plan are hereby merged with and into the PEP Plan. From and after such date all of the assets of each such plan shall be available to pay benefits to all participants of the single merged plan. Such merger shall be in compliance with Section 414(l) of the Internal Revenue Code ("Code"), and the accrued benefits of participants in the PAS Plan and the PBG Plan, respectively, will be preserved as required by the anti-cutback rules of Section 411(d)(6) of the Code.

Until such time as a single plan document is adopted that incorporates the applicable provisions of the three separate documents of the merged plans, the plan document shall comprise the PEP Plan document, as amended, the PAS Plan document, as amended (which shall

51304063



be referred to as the PAS Plan Merger Appendix), and the PBG Plan document, as amended (which shall be referred to as the PBG Plan Merger Appendix), except as provided in this merger amendment. Each such separate plan document shall govern the rights of participants covered by such document in accordance with its terms, including individuals who become participants after the Merger Date, and the benefits accrued by participants in accordance with the terms of such document while covered by such document, as in effect at the applicable time, including but not limited to eligibility to participate, service credit, accrual of benefits, vesting and payment options, except as provided below:

1.    The interest of the PAS Plan in the Trust Fund under the PepsiAmericas Defined Benefit Master Trust, as amended (as defined therein) and the interest of the PBG Plan in the Trust Fund under The Pepsi Bottling Group, Inc. Defined Benefit Master Trust Agreement, as amended (as defined therein), shall be assets of the PEP Plan and all of such assets shall be available to pay benefits to all participants of the single merged plan.

2.    As required by Section 414(a) of the Code, a participant's service credited under either one or more of the PEP Plan document, PAS Plan Merger Appendix and PBG Plan Merger Appendix, respectively, shall be recognized solely for purposes of determining whether such participant is vested in the benefit accrued under any of such separate plan documents; provided that solely with respect to a participant who was an employee on February 26, 2010, such service shall also be recognized for other provisions of such separate plan documents that are based on service for vesting, including eligibility for early retirement benefits.

3.    A participant may elect to receive his accrued benefit attributable to the formula in each of the separate plan documents independently, and the provisions contained in such plan document shall be applied independently to each such benefit.   For example, each such respective benefit may have a separate and independent annuity starting date, and the spouse entitled to the survivor annuity with respect such separate benefit shall be the person to whom the participant is married on the annuity starting date applicable to each such separate benefit.

4.    The benefit of a rehired former employee shall be determined independently with respect to the separate benefit accrued or accruable under each of the PEP Plan document, PAS Plan Merger Appendix and PBG Plan Merger Appendix, respectively, subject to all applicable provisions of each such plan document, including plan transfer/non-duplication provisions.

5.    The small-amount cash-out provisions of the PEP Plan document, the PAS Plan Merger Appendix (as modified in this Item 5) and the PBG Plan Merger Appendix shall continue to apply with respect to participants covered by the applicable plan document; provided that, in the event a participant has an accrued benefit under more than one document, such benefits shall be aggregated in determining whether such benefits are subject to cash-out.

Effective for distributions occurring on or after the Merger Date, Section 6.11 of the PAS Plan Merger Appendix is hereby amended to read in its entirety as follows:

### 6.11    Small Pensions

Notwithstanding a Participant's election otherwise or any other provision of this Plan, if as of a commencement date proposed by the Administrator that occurs as soon as practicable following a Participant's Termination of Employment or after such additional events as the Administrator selects for this purpose, the Lump Sum value of a Participant's Retirement Benefit (including a Retirement Benefit of zero dollars because of the vested percentage) does not exceed $1,000, the Administrator shall direct the Trustee to distribute to the Participant the Lump Sum value of the Participant's Retirement Benefit. If the Lump Sum value of a Participant's Retirement Benefit is greater than $1,000 and equal to or less than the Cash-Out Limit, the Administrator shall distribute such Lump Sum value in a default rollover to an individual retirement plan designated by the Administrator, unless the Participant elects to receive the Lump Sum distribution directly or have the Lump Sum paid directly to an eligible retirement plan specified by the Participant in a direct rollover. Notwithstanding the preceding, a distribution shall not be made under this section after distributions have begun in connection with a Payment Date unrelated to this section. With respect to a Retirement Benefit of zero dollars such payment shall be deemed to occur immediately following such Participant's Termination of Employment.

6.    The qualified domestic relations order procedures applicable to the PEP Plan document shall apply to domestic relations orders received by the Plan Administrator (as defined in the PEP Plan document) on or after the Merger Date.

7.    The plan amendment and plan termination provisions in Section 10.6 and Article XI, respectively, of the PEP Plan document shall apply to the single merged plan.

8.    The limitation on benefit provisions in Section 5.5 of the PBG Plan Merger Appendix document shall apply to the single merged plan.

9.    The restrictions on benefits provisions in Article XIII of the PBG Plan Merger Appendix document shall apply to the single merged plan.

10.    The Plan Financing provisions of Article VII of the PEP Plan document, the Administration provisions of Article VIII of the PEP Plan document, the Miscellaneous provisions of Article IX of the PEP Plan document (other than Section 9.6) and the Top-Heavy provisions of Article XII of the PEP Plan document shall govern the single merged plan on or after the Merger Date, in lieu of any similar provisions in the PAS Plan Merger Appendix and the PBG Plan Merger Appendix.

11.    Effective on the Merger Date, the Company is also merging the PepsiAmericas, Inc. Salaried Pension Plan and the PBG Salaried Employees Retirement Plan with and into the PepsiCo Salaried Employees Retirement Plan. Any reference in a separate plan document to the PBG Plan, the PAS Plan, the PBG Salaried Employees Plan or the PepsiAmericas, Inc. Salaried Pension Plan shall mean and refer to the separate plan document of the applicable merged plan.

IN WITNESS WHEREOF, PepsiCo, Inc. hereby adopts the foregoing Merger Amendment this _14th_ day of _____*June*_____, 2010.

**PEPSICO, INC.**

By: _Cynthia M. Trudell_

Cynthia M. Trudell
Senior Vice President and
Chief Personnel Officer

APPROVED:

By: _Stacy L. DeWalt_

Stacy L. DeWalt
Employee Benefits Attorney
Law Department
Date: _May 26_, 2010

- 4 -

## DECEMBER 2010 AMENDMENTS TO THE
## PEPSICO HOURLY EMPLOYEES RETIREMENT PLAN

The PepsiCo Hourly Employees Retirement Plan ("Plan") is hereby amended as follows, effective January 1, 2010 except as otherwise provided herein:

I.

The following paragraphs are added at the end of the "Introduction and History" section which is located in the beginning of the Plan.

<u>2010 PBG/PAS Acquisition, Merger of PBG/PAS Plans and Redesign of this Plan</u>

The foregoing sections of this "Introduction and History" address significant events in the history of this Plan through 2009. This section addresses significant 2010 and 2011 events.

On February 26, 2010, PepsiCo acquired The Pepsi Bottling Group, Inc. and PepsiAmericas, Inc. which became part of the Pepsi-Cola Metropolitan Bottling Company, Inc., a wholly-owned subsidiary of the Company that became part of the business unit in the PepsiCo Organization known as the Pepsi Beverages Company ("PBC"). Also effective on February 26, 2010, the Company assumed sponsorship of the PepsiAmericas, Inc. Hourly Pension Plan ("PAS Plan") and the PBG Hourly Pension Plan ("PBG Plan"). The PAS Plan and PBG Plan had been partially frozen with respect to non-union participants as of the acquisition date.

On and effective June 14, 2010, PepsiCo adopted an amendment merging the PBG Plan and the PAS Plan into this Plan. Thereafter, the PBG Plan was referred to as the PBG Plan Merger Appendix and the PAS Plan was referred to as the PAS Plan Merger Appendix. As part of the December 2010 amendments to the Plan, the PBG Plan Merger Appendix is now Part V of the Plan and the PAS Plan Merger Appendix is now Part VI of the Plan.

On and effective January 1, 2011, this Plan was amended to add a cash balance benefit structure for eligible PBC hourly employees, which is referred to as the "PBC Hourly Employees Retirement Program."

Until such time as a single integrated plan document is adopted that incorporates the applicable provisions of these different features of the merged plans, the PepsiCo Hourly Employees Retirement Plan is comprised of the following four parts:

Part I          Terms of the Plan for Eligible Frito and Quaker employees, certain generally-applicable Plan provisions.

1



Part II      Terms of the Plan for participants within the group formerly covered by the PepsiCo, Inc. Hourly Pension Plan.

Part III      Terms of the Plan for participants within the group formerly covered by the Tropicana Products, Inc. Pension Plan.

Part IV      Terms of the PBC Hourly Employees Retirement Program.

Part V      Terms of the Plan for participants within the group formerly covered by the PBG Hourly Pension Plan.

Part VI      Terms of the Plan for participants within the group formerly covered by the PepsiAmericas, Inc. Hourly Pension Plan.

During 2010, only certain grandfathered and collectively bargained PBC employees were eligible for active participation in this Plan because of the partial freeze of the PBG Plan (incorporated in this Plan document as Part V) and the PAS Plan (incorporated in this Plan document as Part VI) referred to above.

Effective January 1, 2011, eligible PBC hourly employees who were not eligible for participation in Part V or Part VI became eligible for the PBC Hourly Employees Retirement Program in Part IV; provided that certain active non-union participants under Part VI continued to actively participate in Part VI, and, in addition, became eligible for Part IV (the PBC Hourly Employees Retirement Program).

II.

Part I, Article II, is amended as follows:

The first sentence of the definition of "Covered Compensation" is amended to read as follows:

One-twelfth of the average (without indexing) of the Taxable Wage Bases for the 35 calendar years ending with the year in which the Participant attains Social Security retirement age.

The definition of "Social Security Retirement Age" is deleted, and the remaining definitions in Article II are relettered accordingly.

2

III.

Part I, Section 3.1(e)(1), Acquisitions and Divestiture, is amended to read as follows:

(1) In the case of acquisitions, no Employee of a Business that is acquired is eligible for this Plan except as the Company may specify by notice to the Plan Administrator or by amendment to this Plan, and, effective January 1, 2010, no Employee of such a Business who is made eligible for the Plan shall be eligible for the transfer rules in Section 3.6(a) on transferring to this Plan following the acquisition except to this extent this Plan is amended to so provide; and

IV.

Part I, Section 3.3(e)(2) and 3.3(e)(3) (Credited Service), is amended to read as follows:

(2) <u>Disability Pension</u>:  Effective for disability commencement dates on or after January 1, 2001 in the case of a Frito Employee, and effective for a Quaker Employee who begins receiving benefits under an Employer-sponsored long-term disability plan on or after January 1, 2005 (January 1, 2006, in the case of Quaker Dallas SVC Employees), and subject to paragraph (3) below, for purposes of determining the amount of a Disability Pension whose Total and Permanent Disabled referred to in Section 4.5 occurred while the Participant was employed in an eligible classification, Credited Service shall be determined as provided in subsections (a), (b), (c) and (d) above, and then shall be increased by the number of years and days between:  (i) the Participant's Severance from Service Date, and (ii) the Participant's retirement date within the meaning of Section 4.5.

(3) <u>Recovery Following Certain Disabilities</u>:  In the case of a Participant: (i) who has met the eligibility requirements for a Disability Pension set forth in Section 4.5(a)(1)(i), (ii) and (iii), (ii) who became eligible for the increase in Credited Service referred to in paragraph (2) above while the Participant was employed in an eligible classification, (iii) who is subsequently determined not to be totally and permanently disabled (as defined in Section 4.5) and (iv) who at the time of this determination has not yet reached his retirement date (as defined in Section 4.5), such Participant shall have his period of total and permanent disability counted as part of his period of Service and Credited Service hereunder. In the event he returns to employment with the Employer and is eligible under Section 3.1, he shall reparticipate in the Plan as of his date of reemployment and continue to accrue benefits as provided for in the Plan.  In the event such a Participant who is determined to be no longer totally and permanently disabled fails to return to employment with the Employer, he shall be treated as a terminated Employee (eligible only for a Vested Pension) and he shall cease accruing Credited Service as of the date he was determined by the Plan Administrator to be no longer totally and permanently disabled.  The

3

determination of whether a Participant continues to remain totally and permanently disabled shall be made by the Plan Administrator based on the information provided to it.

## V.

Part I, Section 3.5(b)(1) of the Plan is amended to read as follows:

(b) <u>Military Leave</u>: A Participant with service in: (i) the uniformed services within the meaning of Code section 414(u)(5) ("qualified military service") or (ii) the armed forces of the United States ("military service"), shall be credited with Service and Credited Service pursuant to paragraph (1), (2) or (3) below, as applicable:

(1) <u>Annuity Starting Dates After December 11, 1994</u>: A Participant who has an Annuity Starting Date after December 11, 1994 shall receive Service, Credited Service and related accruals with respect to qualified military service in accordance with Code section 414(u). If a Participant dies while performing qualified military service on or after January 1, 2007, the survivors of such Participant are entitled to any additional benefit (including benefit accruals relating to the period of qualified military service, but only if the Participant was eligible for benefit accruals at the start of the qualified military service for deaths on or after January 1, 2011) provided under the Plan as if the Participant had resumed employment and then experienced a Severance from Service on account of death. Effective January 1, 2008, an individual performing services in the uniformed services (as described in Code section 3401(h)(2)(A)) for a period of more than 30 days who is receiving a differential wage payment from an Employer shall be treated as an Employee of such Employer.

## VI.

Part I, Sections 4.1, 4.2, 4.3 and 4.5 (introduction and subsection through the end of paragraph (a)(2)) is amended to read as follows:

4.1 <u>Normal Retirement Pension</u>: A Participant shall be eligible for a Normal Retirement Pension if his employment with the PepsiCo Organization terminates at his Normal Retirement Age, subject to the remainder of this Section. Pension payments shall ordinarily commence on his Normal Retirement Date subject to Section 4.8 (time of payment) and shall be paid monthly for life, unless an optional form of payment is elected and in effect under Section 6.1. Notwithstanding the foregoing, a Participant who does not complete an Hour of Employment on or after January 1, 2011 shall be eligible for a Normal Retirement Pension only if his employment in an eligible classification terminates at his Normal Retirement Age.

4

4.2 Early Retirement Pension: A Participant shall be eligible for an Early Retirement Pension if his employment with the PepsiCo Organization terminates—(i) on or after age 55 but before age 65, and (ii) after he has completed 10 or more Years of Service. Pension payments shall ordinarily commence on the Participant's Normal Retirement Date subject to Section 4.8 (time of payment) and shall be paid monthly for life, unless an optional form of payment is elected and in effect under Section 6.1. However, subject to Section 4.8(c)(2), the Participant may elect (by filing a written election with the Plan Administrator) that his Pension payments shall commence on the first day of any month after the Participant's Retirement but before his Normal Retirement Date, provided that the amount of his Pension shall be reduced in accordance with Section 5.3(a).

(a) Pre-2011 Terminations. Notwithstanding the foregoing, a Participant who does not complete an Hour of Employment on or after January 1, 2011 shall be eligible for an Early Retirement Pension only if his employment in an eligible classification terminates on or after age 55 but before age 65, and after he has completed 10 or more Years of Service, except as provided in subsection (b) below (Quaker Employees).

(b) Certain Pre-2002 Quaker Employees. The requirement in the introduction and subsection (a) of this Section 4.2 that the Participant complete "10 or more Years of Service" shall be reduced to "5 or more Years of Service" or waived (as specified below) in the case of a Pension Benefit determined under Section 5.1C(a) or (c), and in the case a Pension Benefit determined under Section 5.1C(b) for a Participant who was a participant in the Quaker Prior Plan immediately before January 1, 2005 (January 1, 2006 in the case of a Quaker Dallas SVC Employee). The reduction to 5 or more Years of Service shall apply in the case of a Participant who was a Quaker Dallas SVC Employee immediately before January 1, 2006, and in the case of a Participant who was a Quaker Indianapolis SVC Employee immediately before January 1, 2005; in other covered cases a waiver shall apply. However, this reduction or waiver of the service requirement shall only apply for purposes of a Pension Benefit determined under Section 5.1C(b) to the extent such Pension Benefit is related to a period of continuous employment starting on and continuing after January 1, 2005 (January 1, 2006, in the case of Quaker Dallas SVC Employees).

4.3 Vested Pension: A Participant who completes the Service requirement in Section 4.7 shall be eligible to receive a Vested Pension if his employment with the PepsiCo Organization terminates before he is eligible for a Normal, Early or Disability Retirement Pension. Subject to Section 4.8 (time of payment), payment of a Vested Pension shall ordinarily commence on the Participant's Normal Retirement Date. However, subject to Section 4.8(c)(2) and (d), a Participant may elect (by filing a written election with the Plan Administrator) to have his Vested Pension commence as of the first day of any month on or after the date he attains age 55. In the event of such early commencement, his Pension payments shall be reduced in accordance with Section 5.3(b) to reflect the commencement of his benefits prior to age 65. A

5

Participant's Vested Pension shall also be reduced as provided in Section 4.6 to reflect the cost of any Pre-Retirement Spouse's coverage the Participant may have had. A Participant who terminates employment prior to attainment of his Normal Retirement Age and prior to completing the Service requirement in Section 4.7 shall not be eligible to receive a Pension under this Plan.

. . .

4.5 Disability Pension: A Participant's entitlement to a Disability Pension shall be determined as follows:

(a) Disabilities Occurring 2001 or Later: A Participant shall be eligible for a Disability Pension if he or she meets the eligibility requirements set forth in paragraph (1) and the disability commencement date is on or after January 1, 2001 (January 1, 2006, in the case of a Quaker Dallas SVC Employee; January 1, 2005, in the case of all other Quaker Employees).

(1) A Participant is eligible under this paragraph if:

(i) An illness or accidental injury occurs while the Participant is actively employed with the PepsiCo Organization or is being credited with Service while on an Authorized Leave of Absence from the PepsiCo Organization (except that a Participant who reached his retirement date as defined in subsection (a)(4) below before January 1, 2011 shall be eligible for a Disability Pension only if his illness or accidental injury occurred while he was in an eligible classification);

(ii) Such illness or injury renders him Totally and Permanently Disabled (as hereinafter defined), and thereby terminating his active employment (terminating his employment, effective prior to January 1, 2009);

(iii) He completes 10 Years of Service prior to becoming Totally and Permanently Disabled; and

(iv) The Participant continues to be Totally and Permanently Disabled until his retirement date (as defined below).

(2) The term "Totally and Permanently Disabled" shall mean either that:

(i) The Participant has been determined to be eligible to receive long term disability benefits under a Long Term Disability Plan maintained by his Employer (an "LTD Plan"); or

6

(ii) The Participant is not covered by an LTD Plan, but the Participant is entitled to receive Federal Social Security disability benefits (or for periods before the Internal Revenue Service issues a favorable determination letter on this 1997 restatement, the Participant has been determined to be totally and permanently disabled in accordance with standards consistent with those used by the Employer to determine eligibility for benefits under an LTD Plan). A Participant entitled to receive Federal Social Security disability benefits does not have a Disability for purposes of this Plan if any of the following subparagraphs apply:

(A) Criminal Activity Exclusion: The disability was suffered while the Participant committed or attempted an assault, battery or felony;

(B) War or Riot Exclusion: The disability was suffered during the course of a war (declared or undeclared), insurrection, rebellion or participation in a riot or civil commotion;

(C) Self-Inflicted Injury Exclusion: The disability resulted from a self-inflicted injury that was not accidental; or

(D) Substance Abuse Exclusion: The disability was suffered in connection with chronic alcoholism or the use of narcotics, barbiturates, hallucinogenic or other controlled substances.

(iii) Effective on or after January 1, 2011, the Participant is in receipt of a military disability award finding the Participant to be at least 50 percent disabled; provided the Participant was either actively employed by an Employer or on an Authorized Leave of Absence at the onset of the disabling condition.

In each case, the Participant shall not be considered Totally and Permanently Disabled until he has completed the waiting period for benefits applicable under his Employer's LTD Plan.

## VII.

Part I, Section 4.7 of the Plan is amended to read as follows:

4.7 Vesting: A Participant shall be fully vested in, and have a nonforfeitable right to, his Accrued Benefit:

(a) After 5 Years of Service,

7

(b)  Upon attaining Normal Retirement Age while an employee of a member of the PepsiCo Organization,

(c)  In the event the Participant dies on or after January 1, 2011 while an employee of the PepsiCo Organization (including during an Authorized Leave of Absence) or during a military leave recognized under Section 3.5(b),

(d)  In the event the Participant becomes totally and permanently disabled (as defined in Section 4.5) on or after January 1, 2011 while an employee of the PepsiCo Organization (including during an Approved Leave of Absence), or

(e)  In the case of a Participant who has an amount credited to a cash balance account in this Plan and who has an Hour of Employment on or after January 1, 2008, after completing 3 Years of Service.


## VIII.

Part I, Section 4.9(a)(3) is amended to read as follows:

(3)  Consent Required for Cashouts Exceeding $1,000 Effective March 28, 2005.  Notwithstanding the rest of this subsection (a), effective March 28, 2005, if the Actuarial Equivalent lump sum value of a Participant's Vested Pension or Retirement Pension is greater than $1,000 but less than $5,000, the Plan Administrator will pay the portion of the lump sum distribution that constitutes an eligible rollover distribution (within the meaning of Code section 402(c) and the related Treasury Regulations) in a default rollover directly to an individual retirement plan designated by the Plan Administrator unless the Participant elects to receive the lump sum distribution directly or have the lump sum paid directly to an eligible retirement plan specified by the Participant in a direct rollover pursuant to Code section 401(a)(31).


## IX.

Part I, Section 5.1A(1) is amended to read as follows:

(1)    The Pension amount under this paragraph (1) shall equal:

(i)    1.2 percent of the Participant's Highest Average Monthly Earnings up to his Covered Compensation multiplied by the Participant's years of Credited Service up to 35 (up to 30 for Participants first credited with an Hour of Employment on or after January 1, 2011), plus

(ii)    1.43 percent of the Participant's Highest Average Monthly Earnings in excess of his Covered Compensation multiplied by the Participant's years of Credited Service up to 35 (up to 30 for Participants first credited with an Hour of Employment on or after January 1, 2011).

## X.

The June 14, 2010 amendment merging the PAS Plan and the PBG Plan into this Plan, in item 8, provided that the limitation on benefits provisions of Section 5.5 of the PBG Plan would govern the entire merged plan. That provision is hereby repealed so that Section 5.6 of Part I shall continue in force without interruption and apply to the single merged Plan from and after June 14, 2010.

Part I, Section 5.6 is amended in its entirety to read as follows:

5.6    Maximum Pensions (Code Section 415 Rules): A Participant's Pension computed under this Article V shall be subject to the limitations in this Section 5.6, notwithstanding any provision to the contrary and subject to subsection (d) below:

(a) Incorporation by Reference of Code Section 415. Effective January 1, 2010 (except as otherwise provided herein), the Plan will comply with the provisions of Code section 415 which are hereby incorporated by reference. No annual benefit exceeding the Code section 415 limits will be accrued, distributed or otherwise payable in any form of benefit at any time.

(1) Cost-of-Living Adjustments. The Plan adopts the annual cost-of-living adjustments provided by Code section 415(d).

(2) Adjustments. The annual cost-of-living adjustments in paragraph (1) and the adjustments to the compensation-based limits in Code section 415 continue to apply after a Participant's severance from employment. The maximum monthly Pension that is in effect, after application of such adjustments, on a Participant's Annuity Starting Date shall continue to apply to the Participant's Pension from and after such Annuity Starting Date.

(3) Rate of Accruals Adjusted to Comply. The rate of benefit accrual, including the right to any optional form provided in the Plan (and all other defined benefit plans required to be aggregated with the Plan under Code section 415) is automatically frozen or reduced to a level necessary to prevent Section 415 limits from being exceeded.

(4) Mortality Adjustments. In cases where the Plan does not charge for the Pre-Retirement Spouse's Pension, to the extent

9

permitted in Treasury Regulation section 1.415(b)-1(d)(2)(ii), in computing the adjusted dollar limitation under Code section 415(b)(1)(A), no adjustment is made to reflect the probability of a Participant's death after the Annuity Starting Date and before age 62, or after age 65 and before the Annuity Starting Date.

(5) Pre-Effective Date Provisions. For the Plan's maximum benefit limits in effect before the January 1, 2010 generally applicable effective date of this Section 5.6, or the special effective dates in subsection (b)(1) and (b)(2), the version of the Plan in effect at the applicable time shall control.

(b) Definition of Compensation Used for Code Section 415. For purposes of applying the limits of Code section 415, the definition of compensation used will include all items listed in Treasury Regulation section 1.415(c)-2(b) and will exclude all items listed in Treasury Regulation section 1.415(c)-2(c), subject to the following paragraphs.

(1) Post Severance Pay. Effective January 1, 2008, the following amounts are included even if paid after the date on which a Participant ceases to be an Employee ("severance date"), provided they are paid by the later of 2½ months after the severance date or the end of the Plan Year that includes the severance date: (i) regular compensation for services that would have been paid prior to the severance date if the Participant had continued in employment with the Employer, including bonuses and (ii) payments of unused accrued bona fide sick, vacation, or other leave (but only if the Participant would have been able to use the leave if employment had continued).

(2) Differential Pay. Effective January 1, 2009, compensation includes differential wage payments (as defined in Code section 3401(h)) to an individual on qualified military service.

(c) More Than One Defined Benefit Plan. If a Participant participates in one or more defined benefit plans that are required to be aggregated with this Plan pursuant to Code section 415(f) and it is necessary to reduce the Participant's benefits to comply with this Section 5.6, the Participant's benefit under the PepsiCo Salaried Employees Retirement Plan shall be reduced first, and next the Participant's benefits under the plan in which the participant most recently accrued benefits.

(d) Preservation of Prior Accrued Benefits: This Section 5.6 will not override any accrued benefits preserved in prior versions of the Plan to the extent applicable to the calculation of a Participant's accrued benefits.

XI.

Part I, Section 8.12 is amended to read as follows:

8.12    Limitations on Actions. Effective for claims and actions filed on
or after January 1, 2003, any claim filed under Article X and any action filed in state or
federal court by or on behalf of a former or current Employee, Participant, Beneficiary or
any other individual, person or entity (collectively, a "Petitioner") for the alleged
wrongful denial of Plan benefits or for the alleged interference with or violation of
ERISA-protected rights must be brought within two years of the date the Petitioner's
cause of action first accrues. For purposes of this subsection, a cause of action with
respect to a Petitioner's benefits under the Plan shall be deemed to accrue not later than
the earliest of (i) when the Petitioner has received the calculation of the benefits that are
the subject of the claim or legal action (ii) the date identified to the Petitioner by the Plan
Administrator on which payments shall commence, or (iii) when the Petitioner has actual
or constructive knowledge of the facts that are the basis of his claim. For purposes of this
subsection, a cause of action with respect to the alleged interference with ERISA-
protected rights shall be deemed to accrue when the claimant has actual or constructive
knowledge of the acts that are alleged to interfere with ERISA-protected rights. Failure
to bring any such claim or cause of action within this two-year time frame shall preclude
a Petitioner, or any representative of the Petitioner, from filing the claim or cause of
action. Correspondence or other communications following the mandatory appeals
process described in Section 8.10 or 8.11 shall have no effect on this two-year time
frame.

XII.

A new Section 8.13 is added to Part I to read as follows:

8.13    Restriction of Venue. Any claim or action filed in court or any
other tribunal in connection with the Plan by or on behalf of a Petitioner (as defined in
Section 8.12 above) shall only be brought or filed in the United States District Court for
the Southern District of New York, effective for claims and actions filed on or after
January 1, 2011, or effective for claims filed pursuant to Section 8.10 on or after January
1, 2011 in the case of claims or actions that seek review of a claim filed pursuant to
Section 8.10.

XIII.

The June 14, 2010 amendment merging the PAS Plan and the PBG Plan into this Plan, in item 9,
provided that the restriction on benefits provisions in Article XIII of the PBG Plan would govern
the entire merged plan. That provision is hereby repealed so that Section 9.6 and 9.9 of Part I
shall continue in force without interruption and apply to the single merged Plan from and after
June 14, 2010.

11

Part I, Section 9.9 is amended in its entirety to read as follows:

9.9    Funding Based Limitations Required by Code Section 436.

(a)    In General. This Section prescribe limitations on unpredictable contingent event benefits, Plan amendments that increase liabilities, accelerated benefit payments, and benefit accruals when the Plan funding status falls below certain levels, effective for Plan Years beginning on and after January 1, 2008. Subsections (b) through (f) below contain the terms and conditions pertaining to such limitations that are required to be set forth in the Plan. Code section 436 and the regulations thereunder contain other rules relating to the operation and implementation of such terms and conditions. Treas. Reg. § 1.436-1 is hereby incorporated by reference to the extent not explicitly provided in this Section. The rules of Code section 436 that are explicitly provided in this Section shall be construed in a manner that complies with such regulations. The meaning and use of terms in such regulation, including "Funding Target," "Funding Target Attainment Percentage," "Adjusted Funding Target Attainment Percentage" ("AFTAP"), and the "Section 436 measurement date," are hereby incorporated by reference. Citations to regulations refer to the final regulations promulgated by the Internal Revenue Service under Code section 436 on October 15, 2009.

(b)    Shutdown and Unpredictable Contingent Event Benefits. An unpredictable contingent event benefit shall not be paid to a Participant during a Plan Year if the AFTAP for such Plan Year is less than 60%, or is 60% or more but would be less than 60% if the AFTAP were redetermined applying an actuarial assumption that the likelihood of occurrence of the unpredictable contingent event during the Plan Year is 100%; provided the unpredictable contingent event occurs within such Plan Year. Benefits attributable to an unpredictable contingent event that occurs during a period during which such restriction does not apply shall not be subject to such limitation. The prohibition under this subsection shall cease to apply to benefits attributable to an unpredictable contingent event occurring during the Plan Year upon payment by the Employer of the contribution described in Treas. Reg. § 1.436-1(f)(2)(iii) with respect to that event. For purposes of this subsection, an unpredictable contingent event benefit means any benefit or increase in benefits to the extent the benefit or increase would not be payable but for the occurrence of an unpredictable contingent event. An unpredictable contingent event means a plant shutdown or similar event, or an event (including the absence of an event) other than the attainment of any age, performance of any service, receipt or derivation of any compensation, or the occurrence of death or disability.

(c)    Plan Amendments Increasing Benefits. No amendment to the Plan that has the effect of increasing liabilities of the Plan by reason of increases in benefits, establishment of new benefits, changing the rate of benefit accrual, or changing the rate at which benefits become non-forfeitable shall take effect in a Plan Year if the AFTAP for the Plan Year is less than 80%, or is 80% or more but would be less than 80% if the benefits attributable to the Plan amendment were taken into account in determining the AFTAP. The limitation under this subsection shall cease

12

to apply with respect to an amendment, effective on the later of the first day of the Plan Year or the effective date of the amendment, upon payment by the Employer of the contribution described in Treas. Reg. § 1.436-1(f)(2)(iv). The limitation under this subsection shall not apply to any amendment that provides for an increase in benefits under a formula that is not based on a Participant's compensation, but only if the rate of increase in benefits does not exceed the contemporaneous rate of increase in average wages of Participants covered by the amendment. The determination of the rate of increase in average wages is made by taking into consideration the net increase in average wages from the period of time beginning with the effective date of the most recent benefit increase applicable to all of those Participants who are covered by the current amendment and ending on the effective date of the current amendment. To the extent an amendment provides for (or any pre-existing plan provision results in) a mandatory increase in vesting under the Code or ERISA, or increases vesting required by the top heavy rules, such amendment (or pre-existing plan provision) shall not be treated as changing the rate at which benefits become non-forfeitable under this section to the extent the increase in vesting is necessary to enable the Plan to continue to satisfy the requirements for qualified plans.

(d) <u>Accelerated Payments – Lump Sum Distributions.</u>

(1) <u>AFTAP Less Than 60%</u>. If the AFTAP for the Plan Year is less than 60%, the Plan shall not pay any Prohibited Payment, and no Participant or Beneficiary shall be permitted to elect an optional form of benefit that includes a Prohibited Payment, with an Annuity Commencement Date on or after the applicable Section 436 measurement date. If a Participant or Beneficiary requests a distribution in a form of benefit that is prohibited under the immediately preceding paragraph, the Participant or Beneficiary may elect another form of benefit available under the Plan or may defer payment to a later date otherwise permitted by the Plan.

(2) <u>Bankruptcy</u>. The Plan shall not make any Prohibited Payment, and no Participant or Beneficiary shall be permitted to elect an optional form of benefit that includes a Prohibited Payment, with an Annuity Commencement Date that occurs during any period in which the Company is a debtor in a case under title 11, United States Code, or similar federal or state law, except for payments within a Plan Year with an Annuity Commencement Date that occurs on or after the date on which the enrolled actuary of the Plan certifies that the AFTAP for that Plan Year is not less than 100%. If a Participant or Beneficiary requests a distribution in a form of benefit that is prohibited under the immediately preceding sentence, the Participant or Beneficiary may elect another form of benefit available under the Plan or may defer payment to a later date otherwise permitted by the Plan.

13

(3) <u>AFTAP Between 60% and 80%</u>.

(i)  If the AFTAP for a Plan Year is 60% or more but is less than 80%, a Participant or Beneficiary is not permitted to elect the payment of an optional form of benefit that includes a Prohibited Payment, and the Plan shall not pay any Prohibited Payment, with an Annuity Commencement Date on or after the applicable Section 436 measurement date, and before a subsequent Section 436 measurement date as of which the AFTAP is at least 80%, unless the present value, determined in accordance with Code section 417(e)(3), of the portion of the benefit that is being paid in a Prohibited Payment (which portion is determined under Treas. Reg. § 1.436-1(d)(3)(iii)(B)) does not exceed the lesser of:

(A)  50% of the present value (determined in accordance with Code section 417(e)(3)) of the benefit payable in the optional form of benefit that includes the Prohibited Payment; or

(B)  100% of the PBGC Maximum Benefit Guarantee Amount.

If an optional form of benefit that is otherwise available under the terms of the Plan is not available as of the Annuity Commencement Date because of the application of this paragraph (3), a Participant or Beneficiary who elects such an optional form may elect to commence benefits with respect to the Participant's or Beneficiary's entire benefit under the Plan in any other optional form of benefit available under the Plan at the same Annuity Commencement Date that complies with the immediately preceding paragraph, to defer payment to a later date otherwise permitted by the Plan, or to bifurcate the benefit into the Unrestricted and Restricted Portions of the benefit as provided in subparagraph (ii).

(ii)  If a Participant or Beneficiary elects to bifurcate the benefit into Unrestricted and Restricted Portions under paragraph (i) above, such bifurcation shall be made in accordance with the following:

(A)  The Unrestricted Portion may be paid at that Annuity Commencement Date in the form of any optional form of benefit otherwise available under the Plan (whether or not the optional form of benefit with respect to the Unrestricted Portion is a Prohibited Payment), determined by treating the Unrestricted Portion as if it were the Participant's entire benefit under the Plan;

(B)  If the Participant or Beneficiary elects payment of the Unrestricted Portion of the benefit described in this paragraph in the form of a Prohibited Payment, the Participant or Beneficiary may elect payment of the Restricted Portion in any

14

optional form of benefit under the Plan that would not have included a Prohibited Payment if that optional form applied to the Participant's or Beneficiary's entire benefit;

(C) If the Participant or Beneficiary elects payment of the Unrestricted Portion of the benefit described in this paragraph in the form of a Prohibited Payment, the Participant or Beneficiary may elect to defer payment of the Restricted Portion of the benefit described in this paragraph to a later date otherwise permitted by the Plan; and

(D) If the Participant or Beneficiary elects payment of the Unrestricted Portion of the benefit described in this paragraph in the form of a Prohibited Payment, the Participant or Beneficiary may elect payment of the Restricted Portion of the benefit described in this paragraph in the form of the Special Bifurcated Option. Under the Special Bifurcated Option, if the Participant or Beneficiary elects payment of the Unrestricted Portion of the benefit described in this paragraph in the form of a Prohibited Payment, the Participant or Beneficiary may, subject to the notice and spousal consent provisions governing the election of a form of benefit other than a qualified joint and survivor annuity, elect to receive payment of the Restricted Portion of the benefit described in this paragraph in the form of a single life annuity. After a subsequent Section 436 measurement date as of which the AFTAP is at least 80%, a Participant who previously elected such a single life annuity payment option may elect, subject to the notice and spousal consent provisions governing the election of a form of benefit other than a qualified joint and survivor annuity, to receive the remaining value of the Restricted Portion of the benefit in the form of any payment option then available under the Plan. For purposes of the notice and spousal consent provisions governing such election, and the actuarial assumptions applicable to computing the amount of such lump sum, the Annuity Starting Date for the qualified joint and survivor annuity that is payable under the Plan at the same time as such lump sum shall be treated as a new Annuity Starting Date.

(iii) In the case of any bifurcated benefit option, the rules of Treas. Reg. § 1.417(e)-1 are applied separately to the separate optional forms for the Restricted Portion and the Unrestricted Portion.

(iv) In the case of a Participant with respect to whom a Prohibited Payment (or series of Prohibited Payments under a single optional form of benefit) is made pursuant to paragraphs (i) or (ii) above, no additional Prohibited Payment may be made with respect to that

15

Participant during any period of consecutive Plan Years for which
Prohibited Payments are limited under this subsection (d).

(4) Effective Date of Limitations on Prohibited Payments. If the
enrolled actuary issues a certification of the AFTAP before the first day of the
tenth month a Plan Year for which a presumed AFTAP applies pursuant to the
rules of Treas. Reg. § 1.436-1(g)(2) or (g)(3), the limitations on Prohibited
Payments apply for distributions with Annuity Commencement Dates on and after
the issuance of such a certification using the certified AFTAP for the Plan Year.

(5) Exception for Cashouts. The limitations on Prohibited
Payments under this subsection (d) shall not apply to small cashout distributions
under Section 4.9.

(6) Definitions. The following definitions apply for purposes of
this subsection (d):

(i) Unrestricted Portion. The Unrestricted Portion of the
benefit with respect to any optional form of benefit is generally 50% of the
amount payable under the optional form of benefit; provided that with
respect to an optional form of benefit that is a Prohibited Payment on
account of a social security leveling feature (as defined in Treas. Reg.
§1.411(d)-3(g)(16)) or a refund of employee contributions feature (as
defined in Treas. Reg. §1.411(d)-3(g)(11)) the Unrestricted Portion of the
benefit is the optional form of benefit that would apply if the Participant's
or Beneficiary's accrued benefit were 50% smaller. Notwithstanding the
foregoing, the Unrestricted Portion of the benefit with respect to the
optional form of benefit shall be reduced, to the extent necessary, so that
the present value (determined in accordance with Section 417(e) of the
Code) of the Unrestricted Portion of that optional form of benefit does not
exceed the PBGC Maximum Benefit Guarantee Amount.

(ii) Restricted Portion. The Restricted Portion of the
benefit means the portion of the benefit that is not described in the
immediately preceding paragraph.

(iii) PBGC Maximum Benefit Guarantee Amount. The
PBGC Maximum Benefit Guarantee Amount described in this Section is
the present value (determined under guidance prescribed by the PBGC,
using the interest and mortality assumptions under Section 417(e) of the
Code) of the maximum benefit guarantee with respect to a Participant
(based on the Participant's age or the Beneficiary's age at the Annuity
Commencement Date) under section 4022 of ERISA for the year in which
the Annuity Commencement Date occurs.

16

(iv) <u>Prohibited Payment</u>. Prohibited Payment means any payment for a month that is in excess of the monthly amount paid under a Single Life Annuity (plus any social security supplements described in the last sentence of Section 411(a)(9) of the Code) to a Participant or Beneficiary whose Annuity Commencement Date occurs during any period that a limitation under this Section is in effect (or, in the case of a Beneficiary that is not an individual, any payment for a month that is in excess of the monthly amount payable in installments over 240 months that is Actuarially Equivalent to the benefit payable to the Beneficiary); any payment for the purchase of an irrevocable commitment from an insurer to pay benefits; any transfer of assets and liabilities to another plan maintained by the PepsiCo Organization that is made in order to avoid or terminate the application of the limits of Section 436 of the Code; and any other payment that is identified as a Prohibited Payment by the IRS.

(v) <u>Annuity Commencement Date</u>. Solely for purposes of applying the limitations on accelerated benefit payments under this section, the term Annuity Commencement Date means, as applicable:

(A) The first day of the first period for which an amount is payable as an annuity as described in Section 417(f)(2)(A)(i) of the Code;

(B) In the case of a benefit not payable in the form of an annuity, the Annuity Starting Date for the Qualified Joint and Survivor Annuity that is payable under the Plan at the same time as the benefit that is not payable as an annuity;

(C) In the case of an amount payable under a retroactive Annuity Starting Date, the benefit commencement date;

(D) The date of any payment for the purchase of an irrevocable commitment from an insurer to pay benefits under the Plan; and

(E) The date of any transfer of assets and liabilities from the Plan to another plan maintained by the PepsiCo Organization.

If a Participant commences benefits at an Annuity Commencement Date (as defined above) and, after the death of the Participant, payments continue to a Beneficiary, the Annuity Commencement Date for the payments to the Participant constitutes the Annuity Commencement Date for payments to the Beneficiary, except that a new Annuity Commencement Date occurs (determined by applying (a), (b) and (c) above to the payments to the Beneficiary) if the amounts payable to all

Beneficiaries of the Participant in the aggregate at any future date can exceed the monthly amount that would have been paid to the Participant had he not died.

(e) <u>Benefit Accruals While Plan is Severely Underfunded</u>. If the AFTAP for the Plan Year is less than 60%, benefit accruals under the Plan shall cease as of the applicable Section 436 measurement date, and the Plan may not be amended in a manner that would increase the liabilities of the Plan by reason of an increase in benefits or establishment of new benefits. The prohibition under this subsection shall cease to be effective (i) on the date the enrolled actuary issues a certification that the AFTAP for the Plan Year is at least 60%, or (ii) with respect to any Plan Year, effective the first day of the Plan Year, upon payment by the Employer of the contribution described in Treas. Reg. § 1.436-1(f)(2)(v).

(f) <u>Effect of Presumed AFTAP</u>. For any period during which a presumed AFTAP applies pursuant to Code section 436(h) and Treas. Reg. § 1.436-1(h), the limitations of subsections (b) through (e) above shall apply as if the AFTAP were the presumed AFTAP determined under Code section 436(h) and Treas. Reg. § 1.436-1(h), updated to take into account certain unpredictable contingent event benefits and plan amendments in accordance with Code section 436 and Treas. Reg. § 1.436-1(g).

## XIV.

Part I, Appendix Article PBG/PAS (PBG/PAS Acquisition) is amended to read as follows:

### Appendix Article PBG/PAS (PBG/PAS Acquisition)

The Company has reached an agreement to acquire The PepsiCo Bottling Group, Inc. and its affiliates ("PBG") and PepsiAmericas, Inc. and its affiliates ("PAS"), with the closing of the acquisition on February 26, 2010 ("Closing"). From and after the Closing, references in this Appendix Article to "PBG" and "PAS" shall mean the Pepsi Beverages Company, of which PBG and PAS became a part as a result of the acquisition. The Plan intends to use the special rule under Code section 410(b)(6)(C) and Treasury Regulation section 1.410(b)-2(f) that treats a plan as satisfying the coverage rules of section 410(b) for a limited period of time after an acquisition provided the plan satisfies section 410(b) immediately before the acquisition and provided there is no significant change in the plan or in the coverage of the plan other than the acquisition or disposition. The Plan has determined that it satisfies the coverage rules as of immediately before the acquisition (using the three-year testing rule in Revenue Procedure 93-42). The provisions of this Appendix do not result in a change in the Plan or in the coverage of the Plan other than the acquisition or disposition within the meaning of Code section 410(b)(6)(C) and accordingly the terms of this Appendix are consistent with qualifying for that special rule.

18

PBG/PAS.1  PBG and PAS are not participating Employers in the Plan and employees of PBG and PAS are ineligible to participate in the Plan except as otherwise provided in this Article PBG/PAS.

PBG/PAS.2  Effective for periods before January 1, 2011, PBG and PAS shall be participating Employers in this Plan with respect to any employees it hires on or after the Closing who are Employees immediately before such date of hire.

PBG/PAS.3  Individuals who are hired by PBG or PAS as employees on or after the Closing and are not Employees immediately before such date of hire are ineligible to participate in the Plan so long as they are continuously employed thereafter within the PepsiCo Organization.

## XV.

Part I, Appendix Article S (PBG Transferred and Transition Individuals) shall be inapplicable with respect to transfers of employment within the PepsiCo Organization occurring on or after February 26, 2010.

## XVI.

Part I, Schedule 2 to the Plan is revised to read as follows::

## SCHEDULE 2 - Designated Participating Employers

The following lists the names of the subsidiaries and affiliates that the Company has authorized to participate in the Plan and that have adopted the Plan for their Employees as of January 1, 2011.

:

FL Transportation Inc.
Frito-Lay North American Inc.
Frito-Lay Inc.
Naked Juice Co of Glendora Inc.
Quaker Sales & Distribution, Inc
Rolling Frito-Lay Sales LP
Stacy's Pita Chip Company Inc.
Golden Grain Company
QTG Development, Inc.
QTG Services, Inc.
Quaker Manufacturing LLC
The Quaker Oats Company
SVC Logistics Inc.
SVC Manufacturing, Inc.

19

The Gatorade Company
Tropicana Services Inc.
Tropicana Manufacturing Company, Inc.
Tropicana Products Sales, Inc.
Tropicana Transportation Corp.
Tropicana Products, Inc.
Izze Beverage Co.
PepsiCo, Inc.
Pepsi-Cola Advertising and Marketing, Inc.
Pepsi-Cola Management and Administrative Services, Inc.
Pepsi-Cola Sales and Distribution, Inc.
Pepsi-Cola Technical Operations, Inc.
SoBe Operating Corp, Inc.
TPI Urban Renewal Corp
PepsiCo Global Mobility LLC

## XVII.

Part II of the Plan (terms for participants within the group formerly covered by the PepsiCo Hourly Pension Plan) is amended as follows, with the remainder unchanged:

1. The table in Section I-V.7 of the Appendix (Multipliers for Purchase and Valhalla (Local 30)) is amended to read as follows:

| For Participants Terminating On Or After | Monthly Rate |
|---|---|
| Effective Date | $47.00 |
| May 1, 1999 | $48.00 |
| May 1, 2000 | $50.00 |
| May 1, 2001 | $52.00 |
| May 1, 2002 | $53.00 |
| May 1, 2003 | $55.00 |
| May 1, 2004 | $56.00 |
| May 1, 2005 | $57.00 |
| May 1, 2008 | $63.00 |
| May 1, 2009 | $65.00 |
| May 1, 2010 | $66.00 |
| May 1, 2011 | $67.00 |

2. The table in Section II.G.3 of the Appendix (Multipliers for Puerto Rico (Manufacturing, Local 901) is amended to read as follows:

20

| For Participants Terminating | Monthly Rate |
|---|---|
| Spin-Off Date-February 28, 2001 | $30.00 |
| March 1, 2001-February 28, 2002 | $36.00 |
| March 1, 2002-February 28, 2003 | $37.00 |
| March 1, 2003-February 29, 2004 | $38.00 |
| March 1, 2004-February 28, 2005 | $38.00 |
| March 1, 2005-February 28, 2008 | $40.00 |
| March 1, 2008-February 28, 2009 | $43.00 |
| March 1, 2009-February 28, 2011 | $45.00 |

3.  The table in Section II.EE.3 of the Appendix (Multipliers for Puerto Rico (Office, Local 901) is amended to read as follows:

| For Participants Terminating | Monthly Rate |
|---|---|
| Spin-Off Date-April 14, 1999 | $30.00 |
| April 15, 1999-April 14, 2000 | $32.00 |
| April 15, 2000-April 14, 2003 | $33.00 |
| April 15, 2003-April 14, 2004 | $34.00 |
| April 15, 2004-April 14, 2006 | $35.00 |
| April 15, 2006-April 14, 2007 | $38.00 |
| April 15, 2007-April 14, 2009 | $40.00 |
| April 15, 2009-April 14, 2010 | $41.00 |
| April 15, 20010-April 14, 2011 | $43.00 |

## XVIII.

Part III of the Plan (terms for participants within the group formerly covered by the Tropicana Products Pension Plan) is amended as follows:

1.  Appendix F, Section 4.1(b) (Local 15), introduction and paragraph (i), is amended to read as follows:

    (b)  Subject to Section 5.1, the monthly normal retirement Pension payable upon retirement on a Participant's Normal Retirement Date shall be determined in accordance with the following, up to a total maximum of 35 years of Benefit Service:

        (i)  With respect to a Participant who was hired and became an Eligible Employee after January 1, 1985, effective April 17, 2006:

            (A)  $45.00 multiplied by Benefit Service earned on or after January 1, 1985 and before April 17, 2006 ($47 effective

21

April 20, 2010, $49 effective April 20, 2011 and $52 effective April 20, 2012), plus

(B)     $60.00 multiplied by Benefit Service earned on or after April 17, 2006 ($62 effective April 20, 2010, $64 effective April 20, 2011 and $67 effective April 20, 2012);

### XIX.

Part V of the Plan (terms for participants within the group formerly covered by the PBG Hourly Pension Plan) is amended as follows:

1.  The second paragraph of Section 2.1(o)(2) is amended effective January 1, 2011 to read in its entirety as follows:

A Grandfathered Participant shall cease to be a Grandfathered Participant if such Participant (i) incurs a Severance from Service after April 1, 2009; and (ii) is re-employed by a member of the PepsiCo Organization following a Break in Service. An Employee who, after December 31, 2010, as a result of a change in employment classification from salaried to hourly, becomes a member of a Participating Employee Group shall not be an Eligible Employee unless such Employee satisfies the requirements of Section 2.1(o)(1) at such time. A Grandfathered Employee who transfers to a salaried position on or after January 1, 2011 and, within one year of such transfer returns to an hourly position in a Participating Employee Group with Pepsi Beverages Company, shall resume his or her status as a Grandfathered Employee on the date of such transfer back to hourly status. In addition, (i) an Employee who satisfies the requirements of Section 2.1(o)(1) on the effective date of a union decertification resulting in the Employee's change in status to non-union shall be treated as a Grandfathered Employee effective on such decertification date to the extent the Employee remains continuously employed as an hourly non-union Employee of Pepsi Beverages Company; and (ii) a Grandfathered Participant who transfers to a non-union hourly position within Pepsi Beverages Company will be eligible for continued accruals as a Grandfathered Participant.

2.  Section 3.1(a)(1) is amended effective January 1, 2011 to read in its entirety as follows:

(1)     An Eligible Employee who is actively employed in a Participating Employee Group on or after the applicable Location Effective Date shall become a Participant on the later of:

(A)     The attainment of age 21; and

22

(B)   The January 1 or July 1 coincident with or next following the date the Employee has completed a twelve-month period of employment in which he is credited with at least 1,000 Hours of Employment, as measured in subsection (b) below.

3.   The first sentence of Section 3.2 is amended to read as follows:

Subject to the following Sections of this Article, a Participant's entitlement to benefits under the Plan shall be based upon his Period of Service, determined as follows.

4.   The first sentence of Section 3.3 is amended to read as follows

Subject to the following Sections of this Article and Section 6.7 (cashout distributions), the amount of a Participant's Pension shall be based upon his period of Credited Service, determined as follows.

5.   Section 3.5(c) is amended to read as follows:

(c) Military Leave:  A Participant shall receive Service, Credited Service and related accruals with respect to qualified military service, as that term is defined under Code section 414(u)(5), in accordance with Code section 414(u).  If a Participant dies while performing qualified military service on or after January 1, 2007, the survivors of such Participant are entitled to any additional benefit (including benefit accruals relating to the period of qualified military service for deaths on or after January 1, 2011, provided the Participant was eligible for benefit accruals at the start of the qualified military service) provided under the Plan as if the Participant had resumed employment and then experienced a Severance from Service on account of death.  Effective January 1, 2008, an individual performing services in the uniformed services (as described in Code section 3401(h)(2)(A)) for a period of more than 30 days who is receiving a differential wage payment from an Employer shall be treated as an Employee of such Employer.

6.   Sections 4.2, 4.3 and 4.4(a) are amended effective January 1, 2011 to read as follows:

4.1   Normal Retirement Pension:  A Participant shall be eligible for a Normal Retirement Pension if his employment with the PepsiCo Organization terminates at his Normal Retirement Age, subject to the remainder of this Section.  Normal Retirement Pension payments shall commence on the Participant's Normal Retirement Date and shall be made in the normal form of payment under Section 6.1, unless an optional form of payment is elected and in effect under Section 6.2.  Notwithstanding the foregoing, a Participant who does not complete an Hour of Employment on or after January 1, 2011 shall be eligible for a Normal Retirement Pension only if his employment as an Eligible Employee terminates at his Normal Retirement Age.

23

4.2    Early Retirement Pension: A Participant shall be eligible for an Early Retirement Pension if the Participant's employment with the PepsiCo Organization terminates on or after age 55 but before age 65, and after the Participant has completed ten or more Years of Service, subject to the remainder of this Section. Early Retirement Pension payments shall ordinarily commence on the Participant's Normal Retirement Date and shall be made in the normal form of payment under Section 6.1, unless an optional form of payment is elected and in effect under Section 6.2. However, subject to Section 6.6, the Participant may elect (by filing a written election with the Plan Administrator) to have Early Retirement Pension payments commence on the first day of any month on or after the Participant retires but before his Normal Retirement Date, provided that the amount of the Early Retirement Pension shall be reduced in accordance with Section 5.3(a). Notwithstanding the foregoing, a Participant who does not complete an Hour of Employment on or after January 1, 2011 shall be eligible for an Early Retirement Pension only if his employment as an Eligible Employee terminates on or after age 55 (but before age 65) and after he has completed 10 or more Years of Service.

4.4    Vested Pension

(a)    Vesting Requirements: A Participant shall be fully vested in, and have a nonforfeitable right to, his Accrued Benefit:

(1)    After 5 Years of Service,

(2)    Upon attaining Normal Retirement Age while an employee of a member of the PepsiCo Organization,

(3)    In the event the Participant dies while an employee of the PepsiCo Organization (including during an Approved Leave of Absence) (*see* Section 3.5(b) for deaths that occur during military leave),

(4)    In the event the Participant becomes totally and permanently disabled (as defined in Section 4.5 of Part I of the Plan) on or after January 1, 2011 while an employee of the PepsiCo Organization (including during an Approved Leave of Absence), or during a military leave recognized under Section 3.5(b), or

(5)    In the case of a Participant who has an amount credited to a cash balance account in this Plan and who has an Hour of Employment on or after January 1, 2008, after completing 3 Years of Service.

...

24

7. Section 4.6(c) is amended by the addition of the following to the end thereof:

> Effective January 1, 2011 and notwithstanding anything in this Section to the contrary, a Participant who is not an Eligible Employee and who becomes Totally and Permanently Disabled while employed by a member of the PepsiCo Organization and remains Totally and Permanently Disabled until the Participant satisfies the age and service conditions for a Deferred Disability Pension will be treated as eligible for such Deferred Disability Pension solely for purposes of the reduction factors described in Section 4.3 and not for any other purpose, including the calculation of the Participant's accrued benefit at Normal Retirement Age.

8. Section 4.7(c) is amended effective January 1, 2010 to read in its entirety as follows:

> (c)    Other Survivor Pensions: An Eligible Spouse must be named as a beneficiary to a 100% or 75% survivor option pursuant to Section 6.2 to be eligible for a survivor benefit with regard to such options.

9. Section 4.8 is amended effective January 1, 2010 to read in its entirety as follows:

> 4.8    <u>Waiver of Pre-Retirement Spouse's Pension</u>: A Participant who terminates his employment with a Vested Pension but who has not fulfilled the requirements for a Retirement Pension is entitled to waive his Pre-Retirement Spouse's Pension pursuant to this section.

> (a)    Notice, Election, Revocation: The Plan Administrator shall provide a written explanation of a Participant's right to elect to waive the Pre-Retirement Spouse's Pension available to his Eligible Spouse describing the terms and conditions of the Pre-Retirement Spouse's Pension, the right to elect to waive and the effect of an election to waive the Pre-Retirement Spouse's Pension, the requirement for spousal consent and the Participant's right to revoke a waiver. This explanation will be provided at the time specified in the applicable regulations. A Participant may only waive a Pre-Retirement Spouse's Pension during the election period that:

> > (1)    commences on the date the Participant terminates employment and

> > (2)    continues thereafter until the earlier of his date of death or his Annuity Starting Date.

> A Participant may revoke a waiver of a Pre-Retirement Spouse's Pension at any time during the period described in the preceding sentence. To be effective hereunder, any election to waive Spouse's coverage and any revocation of such election must be in writing on the form prescribed by the Plan Administrator and

must be filed with the Plan Administrator prior to the earlier of the Participant's death or his Annuity Starting Date.

(b)     Spousal Consent: In the case of a Participant who has at least one Hour of Employment or a Severance from Service Date after August 22, 1984, no election to waive a Pre-Retirement Spouse's Pension shall take effect unless the Eligible Spouse consents in accordance with Section 6.6.

(c)     Cost: If a Participant terminates employment entitled only to a Vested Pension under Section 4.4 and does not waive the Pre-Retirement Spouse's Pension as described in subsection (a), the Pension payable to, or on behalf of, such Participant shall be reduced for each year such coverage is in effect by the applicable percentage set forth below (based on the Participant's age at the time the coverage is in effect) with a pro rata reduction for any portion of a year. No reduction shall be made for coverage in effect within the 90-day period following a Participant's termination of employment.

| Attained Age | Annual Charge |
|---|---|
| Up to 35 | .0% |
| 35 – 39 | .075% |
| 40 – 44 | .1% |
| 45 – 49 | .175% |
| 50 – 54 | .3% |
| 55 – 59 | .5% |
| 60 – 64 | .5% |
| 65 and over | .0% |

10. Schedule 2 is amended effective January 1, 2011 to read in its entirety as follows:

EMPLOYERS AS OF JANUARY 1, 2011

Bottling Group, LLC
New Bern Transport Corporation
Grayhawk Leasing, LLC
Hillwood Bottling, Inc
C & I Leasing Inc.

11. The Standard Provisions for Appendices are amended effective November 1, 2010 to add at the end of subsection L the 2010 Retirement Window Supplement, to read in its entirety as follows:

*2010 Retirement Window Program Supplement*

S-1     Purpose

This Supplement to Part V of the Plan ("Part V") modifies the provisions of the Part V as applied to Covered Employees. Unless otherwise expressly qualified by the context of this Supplement, terms used in this Supplement shall have the meaning given those terms in Part V.  Benefits provided under this Supplement are intended to extend Part V's early retirement benefits to Covered Employees.  The provisions of this Supplement shall not reduce the rights (determined without regard to this Supplement) of any Employee under the terms of Part V.

S-2     Effective Date

This Supplement shall be effective November 1, 2010, for Covered Employees.

S-3     Eligibility

The term "Eligible Employee" as used in this Supplement means a Participant in Part V, who satisfies all of the following requirements:

A.      Is an hourly non-union employee who is a Participant in Part V as of November 1, 2010, who, as of such date, is:

- actively at work, or;
- receiving benefits under the PBG Short Term Disability Plan, or;
- receiving workers' compensation benefits, or
- on an approved leave of absence that began on or after July 1, 2010.

B.      As of the date of termination of employment has attained age 50 and has not attained age 55, and has ten or more years of Service.

C.      Is not a highly compensated employee as of the date of termination of employment, within the meaning of Code Section 414(q) and the regulations thereunder.

D.      Is terminated involuntarily on or after November 1, 2010 and on or before December 31, 2010, and is entitled in all respects to receive enhanced severance pay under the PBG Special Early Retirement Severance Program for Eligible Hourly and Commissioned Employees Receiving Hourly Benefits.

E.      Signs, submits and does not revoke the Severance and Release Agreement provided to the Participant under the applicable Special Early Retirement Severance Program.

F.  Does not engage in activities that are grounds for termination prior to the Participant' last day of work.

The term "Covered Employee" as used in this Supplement means an Eligible Employee who elects to receive retirement benefits under Part V effective on or after November 1, 2010.

S-4  Application to Participate

An Eligible Employee must elect to retire under Part V on any date on or after November 1, 2010 to receive the benefits provided under this Supplement.

S-5  2010 Retirement Window Benefit

A Covered Employee shall be treated as eligible for an Early Retirement Pension under section 4.3 of Part V. The Early Retirement Pension shall be reduced for early commencement from age 62 to the Covered Employee's Annuity Starting Date in accordance with the monthly rates of reduction specified in section 5.3(a) of Part V, which shall include the period of time that the Covered Employee's actual Annuity Starting Date precedes his attainment of age 55.

S-6  Forms of Payment

The forms of payment of the 2010 Retirement Window Benefit to which a Covered Employee shall be entitled pursuant to Section S-5 of this Supplement shall be the forms of payment available to retirees, determined pursuant to section 6.1 of Part V without regard to this Supplement.

S-7  Effect of Plan on Other Employees' Accrued Benefit

The benefit provided under this Supplement is provided only for Covered Employees. The benefit does not become part of the Accrued Benefit under this Plan of any Employee who is not a Covered Employee.

12. The following Appendices to Part V are hereby replaced in their entirety with the attached Appendices labeled "Attachment A" effective as of the dates set forth therein:

Appendix I-B – McKees Rocks (Local 250)
Appendix I-F – McKees Rocks (Local 249)
Appendix I-Z – Mt. Pleasant (Local 486)
Appendix II-A – Saginaw (Local 486)
Appendix II-L – Asbury Park (Local 125)
Appendix IV-Z – McKees Rocks (Local 926)
Appendix VI-D – Petoskey (Local 486)
Appendix VI-H – Moonachie, Caldwell and Kearny (Local 125)
Appendix VII-A – Piscataway and Moonachie (Local 560)

28

> Appendix VII-B – Piscataway (Local 125)
> Appendix X-U – Kaloko-Kona and Hilo (DECE)
> Appendix XII-S – Detroit

13. A new Appendix, "Appendix XVII-L – Syracuse (Local 317)" labeled "Attachment A" is added to Part V, effective as of the date set forth therein.


## XX.

Part VI of the Plan (terms for participants within the group formerly covered by the PAS Hourly Pension Plan) is amended as follows:

1. Section 4.04(a) is amended effective January 1, 2011 to add the following at the end thereof:

> Notwithstanding the preceding, a Participant also shall have a nonforfeitable right to his benefit after any of the vesting events in Section 4.7 of Part I of the Plan.

2. Section 6.09 is amended to replace the first sentence with the following (with Section 6.09 otherwise remaining unchanged):

> If a Participant who commenced to receive his or her Retirement Benefits is reemployed by a Commonly Controlled Entity before his Normal Retirement Date on or after January 1, 2011, payment of his or her Retirement Benefit is subject to the rules of Section 4.10 of Part I of the PepsiCo Hourly Employees Retirement Plan. If a Participant who commenced to receive his or her Retirement Benefits is reemployed by a Commonly Controlled Entity before his or her Normal Retirement Date before January 1, 2011, his or her Retirement Benefit payments shall be discontinued and shall not be paid during the period of such re-employment, his or her previous election of form of payment shall be cancelled, and he or she shall have all Years of Continuous Service reinstated, subject to Sections 3.02 and 3.03, respectively.

3. Section 6.10 is amended to add the following before what is now subsection 6.10(a) (with the remaining subsections of Section 6.10 relettered accordingly but otherwise remaining unchanged):

> 6.10   <u>Post-Normal Retirement Date Suspension</u>.

> (a)   <u>Reemployment on or after January 1, 2011</u>.  If a Participant who commenced to receive his or her Retirement Benefit is employed or reemployed by a Commonly Controlled Entity on or after his Normal Retirement Date, payment of his or her Retirement Benefit is subject to the rules contained in Section 4.10 of Part I of the PepsiCo Hourly Employees Retirement Plan.  If a

Participant is employed or reemployed by a Commonly Controlled Entity on or after his or her Normal Retirement Date either before January 1, 2011, or before commencing to receive his or her Retirement Benefit, payment of his or her Retirement Benefit is subject to the rules of subsections (b) through (d) below.

4. Section 6.11 of the PAS Plan Merger Appendix is amended to add the following to the beginning (with Section 6.11 otherwise remaining unchanged):

The provisions of Section 4.9 of the PepsiCo Salaried Employees Retirement Plan apply in lieu of the following effective June 14, 2010.

5. Section 9.01 is amended to replace what is now before 9.01(a) with the following (with the remaining subsections of 9.01 relettered accordingly but otherwise remaining unchanged except as provided below):

9.01    Claims Procedure.

(a)    The provisions of Section 8.10 of Part I of the PepsiCo Hourly Employees Retirement Plan apply to claims filed on or after January 1, 2011. Claims filed before January 1, 2011 are subject to the following procedures.

6. Section 9.01 is amended further to replace subsection 9.01(l) (as relettered above) with the following:

(l)    Statute of Limitations. The provisions of Section 8.12 of Part I of the PepsiCo Hourly Employees Retirement Plan apply to claims or actions filed on or after January 1, 2011. For causes of action brought before January 1, 2011, no cause of action may be brought by Claimant who has received an Adverse Benefit Determination later than two years following the date of such Adverse Benefit Determination.

7. Section 9.01 is amended further to add a new subsection 9.01(n) as follows:

(n)    Restriction on Venue. Any claim or action filed on or after January 1, 2011, is subject to Section 8.13 of Part I of the PepsiCo Hourly Employees Retirement Plan.

8. The Appendix is amended to replace the first six Adoption Agreements listed below and to add the remaining Adoption Agreements listed below, all as set forth in the attached Adoption Agreements labeled "Attachment B" effective as of the dates set forth therein:

Beloit, Wisconsin, Local No. 695;
Cincinnati, Ohio (Outside), Local No. 1199;
Cincinnati, Ohio, (Inside), Local No. 1199;
Cleveland/Twinsburg, Ohio, Local No. 1164;

30

Elyria, Ohio, Local No. 1164;
Seymour, Indiana, Local No. 1096;
Bowling Green, Kentucky, Local No. 783;
Danville, Illinois, Local No. 26;
Ft. Wayne, Indiana, Local No. 414;
Lima, Ohio, Local No. 908;
Milwaukee, Wisconsin, Local No. 344;
St. Louis, Missouri (includes Jerseyville, Illinois and Pontoon Beach,
   Illinois), Local No. 525;
St. Louis, Missouri, Local No. 688;
Sedalia, Missouri, Local No. 41;
South Bend, Indiana, Local No. 364;
Waterloo, Iowa, Local No. 431.

9. The second paragraph of Section 14.19 of the PAS Plan Merger Appendix is amended to read as follows:

If a Participant dies while performing qualified military service on or after January 1, 2007, the survivors of the Participant are entitled to any additional benefits (including benefit accruals relating to the period of qualified military service for deaths on or after January 1, 2011, provided the Participant was eligible for benefit accruals at the start of the qualified military service) provided under the Plan as if the Participant had resumed employment and then experienced a Termination of Employment on account of death.

10. Any Adoption Agreement provisions modifying Section 6.11 (small dollar cashouts) are hereby repealed as of January 1, 2010.

## XXI

Corrections to the Plan document necessary to carry forth the above amendments, including corrections to cross-references affected by these amendments and carrying forward changes in the names of defined terms, shall be made as necessary.

PEPSICO, INC.

By: _Cynthia M. Trudell_
      Cynthia M. Trudell
      Senior Vice President, Human Resources
      Chief Personnel Officer
      Date:  December  _16_ , 2010

APPROVED:

By: _Stacy L. DeWalt_
      Stacy L. DeWalt
      Employee Benefits Counsel
      Law Department
      Date:  November _30_ , 2010

32