UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GREG PRICE,

        Plaintiff,

                                           Case Number 12-15028

v.                                           Honorable Thomas L. Ludington

PBG HOURLY PENSION PLAN et al.,

        Defendant.

_____ /

**OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS OR TRANSFER AND
TRANSFERRING CASE TO SOUTHERN DISTRICT OF NEW YORK**

        Plaintiff Greg Price worked for Defendant Bottling Group, LLC for twelve years.  As part of his employment, Plaintiff was enrolled in a pension plan.  The plan contains a disability benefits provision.  It also contains a forum selection clause providing that actions regarding the plan "shall only be brought or filed in the United States District Court for the Southern District of New York."  The question in this case is whether to recover under the former provision Plaintiff must also follow the latter.  For the following reasons, the question will be answered in the affirmative.  The case will be transferred to the United States District Court for the Southern District of New York.

**I**

**A**

        In April 1993, Plaintiff began working for Defendant Bottling Group, LLC, d/b/a The Pepsi Bottling Group ("Employer").  *See* Compl. ¶¶ 5–7.  (The parties do not expressly identify what Plaintiff was hired to do or where he was to do it.)

Plaintiff also joined a union, Teamsters Local 486. *Id*. ¶¶ 6–7. As a union member, Plaintiff's employment was governed by a collective bargaining agreement. *Id*. (The particular version of the collective bargaining agreement that Plaintiff relies on has an effective date of August 1, 2007 – July 31, 2010. *See* Compl. Ex. B.)

The collective bargaining agreement requires the Employer to enact a pension plan. Compl. ¶¶ 14–16. Specifically, "Article 29 – Health and Welfare and Pension," begins by providing: "Effective January 1, 1993, all insurance coverage shall be provided through a Company-sponsored Health and Welfare Plan." The Pepsi Bottling Group and Teamsters Local No. 486 Collective Bargaining Agreement 31 ("PBG Collective Bargaining Agreement"), *attached as* Compl. Ex. B. It goes on to provide: "The Employer will provide a Pepsi Bottling Group Pension Plan for all eligible employees." *Id*. at 32. The agreement also identifies the four types of benefits that must be created by the pension plan, specifying that the benefits include:

| | |
|---|---|
| Normal Retirement: | Age 62 and the completion of 5 years of service. |
| Early Retirement: | Ages 55 to 62 and the completion of 10 years of service. There is four percent (4%) annual reduction factor applied to the benefit payable for each year prior to age 62 that the benefit commences. |
| Disability Retirement: | Completion of 10 years of service and in receipt of a Social Security Disability award. The benefit is payable in an unreduced amount 6 months following the date of disability based on credited service up to 6 months following the date of disability. The benefit is payable only until recovery from disability or death. |
| Deferred Vested: | Completion of 5 years of service, but have not met the age and service criteria for early or normal retirement. The benefit is payable at age 62 or can commence as early as age 55 in an actuarially reduced amount. |

*Id*. at 33. And finally, the collective bargaining agreement reserves the Employer's right to unilaterally amend the pension plan's terms, providing: "It is understood and agreed that the

Employer has the sole and exclusive right to amend its present pension plan and execute the legal text of such plan without question by the Union." *Id*. at 34.

**B**

Consistent with its obligations, the Employer promulgated the "Pepsi Bottling Group Hourly Pension Plan" (the second named defendant in this case). *See* Pepsi Bottling Group Hourly Pension Plan (2009 Restatement) ("PBG Plan"), *attached as* Pl.'s Resp. to Defs.' Mot. Ex. C; *see also* Summary of Material Modifications to the PepsiCo Hourly Employees Retirement Plan (2010) ("PEP 2010 Modification Notice"), *attached as* Defs.' Mot. Ex. A; *and* 2010 Amendments to the PepsiCo Hourly Employees Retirement Plan   ("PEP 2010 Plan Amendments"), *attached as* Defs.' Reply Ex. B.  Disability benefits are set out in § 4.6, which provides:

> (a)  *General Rule*:   A participant who, while actively employed, becomes Totally and Permanently Disabled after the Participant completes ten or more Years of Service is eligible for a Disability pension pursuant to subsection (b) or (c) of this section, as described in subsection (d) or, where applicable, as elected in subsection (e). . . .

> (b)  *Requirements for an Immediate Disability Pension*:  Subject to subsection (d), a Participant who meets the requirements in (a) is entitled to an Immediate Disability Pension.   Immediate Disability Pension shall commence on the first day of the month following six months of Total and Permanent Disability . . . .

> (c)  *Requirements for a Deferred Disability Pension*: Subject to subsection (d), if a Participant remains Totally and Permanently Disabled: (1) until reaching normal retirement age or, (2) in the case of a Participant who has attained age 55 but who has not yet attained his Normal Retirement Age and who elects early commencement of a Deferred Disability Pension, until the date the Participant elects . . . to have benefits commence, the Participant shall be entitled to a Deferred Disability Pension pursuant to this section. Deferred Disability Pension payments shall commence on  the first day of the month following the Participant's attainment of Normal Retirement Age . . . .

(d)     *Timing Rule*: Unless modified by the Election described in subsection (e), subsection (b) shall apply to Participants who become Totally and Permanently Disabled before January 1, 1993 and subsection (c) shall apply to Participants who become Totally and Permanently Disabled on or after that date.

(e)     *Election Available to Certain Employees*: Notwithstanding the provisions of subsection (d), Employees who are actively employed on the date subsection (c) began to apply to their Participating Employee Group, who become Totally and Permanently Disabled after that date, and who are in a Participating Employee Group that was covered by subsection (b) on the day before subsection (c) began to apply to their Participating Employee Group, can irrevocably elect to receive the Immediate Disability Pension described in subsection (b).

PBG Plan § 4.6.  Finally, the effective date for plan amendments is set out in § 1.3, which provides: "The rights and benefits of any person entitled to benefits under this Plan shall be determined in accordance with the applicable provision of the Plan in effect at the time the applicable event occurs, except as otherwise explicitly provided in the Plan."  PBG Plan § 1.3.

## C

From April 1993 to April 2005, Plaintiff worked for the Employer.  This changed in April 2005, when Plaintiff had a "career-ending" injury.  Compl. ¶ 8.

In August 2005, Plaintiff filed a claim for disability benefits with the Social Security Administration, which was granted.  *Id*. ¶ 10.  Determining that his disability onset date to be December 24, 2006, the Social Security Administration began paying Plaintiff disability benefits in 2007.  *Id*. ¶¶ 11–12.

## D

On February 26, 2010, the Employer underwent a merger.   Specifically, PepsiCo acquired the Employer, "which became part of the Pepsi-Cola Metropolitan Bottling Company, Inc., a wholly-owned subsidiary of the Company that became part of the business unit in the PepsiCo Organization known as the Pepsi Beverages Company ('PBC').   Also effective on

February 26, 2010, the Company assumed sponsorship of the PepsiAmericas, Inc. Hourly

Pension Plan ('PAS Plan') and the PBG Hourly Pension Plan ('PBG Plan')."   2010 PEP Plan

Amendments 1.

**E**

In April 2010, Plaintiff requested disability benefits from the Employer.  Compl. ¶ 18.

The request was denied.  *Id*. ¶ 21.  In June 2010, Plaintiff appealed the denial to the PBG Plan

administrator.  *See* Compl. ¶ 22; Defs.' Mot. Ex. B.

While Plaintiff's appeal was pending, the Employer exercised its right under the

collective bargaining agreement to unilaterally amend the pension plan.  *See* PBG Collective

Bargaining Agreement 34 (quoted above).

**F**

"Effective June 14, 2010," the Employer notified its employees, "the PBG Pension Plan

('the PBG Plan') and the PepsiAmericas, Inc. Hourly Pension Plan (the 'PAS Plan') merged into

this Plan," the PepsiCo Hourly Employees Retirement Plan ("PEP Plan").   PEP 2010

Modification Notice 1.  And as amended the PEP Plan includes a forum-selection clause that

provides:

> Any claim or action filed in court or any other tribunal in connection with the
> Plan by or on behalf of a Petitioner [such as Plaintiff] shall only be brought or
> filed in the United States District Court for the Southern District of New York,
> effective for claims and actions filed on or after January 1, 2011.

PEP 2010 Plan Amendments 11; *see also* Ryan Aff. ¶ 4 (quoting forum selection clause),

*attached as* Defs.' Mot. Ex. 1.   Reiterating the substance of this forum-selection clause, the

Employer circulated a notice to its employees that explained:

> Any claim or action filed in court or any other tribunal in connection with the
> Plan by or on behalf of a petitioner can only be brought or filed in the United

States District Court for the Southern District of New York, effective for claims and actions filed on or after January 1, 2011.

PEP 2010 Modification Notice 5.

### G

In July 2010, Plaintiff's appeal was denied by the plan administrator. *See* Compl. ¶ 22.

The administrator explained:

> Since you were not deemed Totally and Permanently Disabled before January 1, 1993, you are not eligible for the Immediate Disability Pension according to Section 4.6(d) [quoted above]. Additionally, since you were not employed prior to January 1, 1993, the date when subsection (c), the Deferred Disability Pension provision began to apply [also quoted above], you are not eligible for the Immediate Disability Pension.
>
> As a result, the [PepsiCo Administration Committee] has determined that you are ineligible for an Immediate Disability Pension.
>
> Based on the Social Security Award letter you provided, you are eligible to receive Credited Service towards a Deferred Disability pension as described in Section 4.6(c) [quoted above] as long as you remain eligible for disability benefits under Social Security. If you remain disabled under Social Security, you can commence the Deferred Disability pension at 65, or as early as 55 on an actuarially reduced basis.

Defs.' Mot. Ex. B, at 2. Lastly, the letter noted: "This is the [committee's] final decision. You have the right to bring a civil action under section 502(a) of the Employee Retirement Income Act of 1974 ('ERISA')." *Id.*

### H

Plaintiff, unwilling to accept the administrator's decision, continued to seek relief from the Employer. *See* Compl. ¶¶ 25–30. In December 2010, he submitted documents from both the Social Security Administration and his doctor. *Id.* ¶ 25. In September 2011, the plan administrator again denied Plaintiff's claim. *Id.* ¶ 31.

On September 22, 2011, Plaintiff again sought disability benefits from the plan administrator. *Id*. ¶ 32. Again, benefits were denied. *Id*. ¶ 33. Explaining why, the plan administrator wrote: "You have not provided any new information in your post appeal to support your claim." Defs.' Mot. Ex. C, at 1. The administrator also reiterated that Plaintiff had "exhausted your administrative remedies under the Plan and have the right to bring a civil action under section 502(a) of the Employee Retirement Income Act of 1974." *Id*.

But, the letter cautioned: "Under the terms of the Plan, any claim or action brought in connection with the Plan by a representative on your behalf shall only be brought or filed in the United States District Court for the Southern District of New York." *Id*.

## I

In November 2012, Plaintiff filed a two-count complaint against Defendants in this Court. Count one alleges Defendants breached the collective bargaining agreement in violation of the Labor Management Relations Act. Count Two alleges that Defendants violated ERISA.

Defendants responded by moving to either dismiss or transfer the case. ECF No. 5.

## II

Proper venue under federal law is generally governed by 28 U.S.C. § 1391, which provides:

A civil action may be brought in —

(1)    a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2)    a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3)    if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

§ 1391(b).  When the defendant is a business, § 1391(c)(2) provides that it "resides" wherever "such defendant is subject to the court's personal jurisdiction with respect to the civil action in question."  *Id*.  That is, venue is proper in judicial districts in which the defendant "is doing business."  *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 28 n.8 (1988).

If an action is filed in an improper venue, the court may either dismiss the case or transfer it.  28 U.S.C. § 1406(a).  Specifically, § 1406(a) provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Federal courts are divided over whether a forum selection clause can render an otherwise proper venue "improper" for purposes of § 1406(a).  Wright and Miller report: "Some courts hold that the violation of a forum selection clause renders venue improper and allows the application of Section 1406(a), but other courts hold that only the Section 1391 criteria, and not a forum selection clause, can make venue improper for purposes of Section 1406(a)."  14D Charles Alan Wright et al., *Federal Practice & Procedure* § 3827 (3d ed. 2007) (footnote omitted) (collecting cases).

The Sixth Circuit is in the latter group.  *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 535 (6th Cir. 2002).  Recognizing that public law can be circumscribed but not overwritten by private ordering, the Sixth Circuit instructs that "whether a forum-selection clause should be enforced is a matter of contract, not an issue of proper venue [under § 1391]."  *Id*.; *see also Ricoh*, 487 U.S. at 28 n.8 (suggesting in dictum that venue is "improper" only where the statutory venue requirements have not been met).  That is, a private agreement cannot rewrite the statutorily enumerated "proper" venues.  Notwithstanding a forum selection clause, if the venue

is "proper" under § 1391, a motion to dismiss for improper venue "will not lie." *Kerobo*, 285 F.3d at 536.

Here, Defendants do not dispute that they "reside" in this judicial district for purposes of § 1391. Thus, notwithstanding the forum selection clause, venue is "proper" for purposes of § 1391. Defendants' motion to dismiss will be denied.

### III

### A

Defendants' motion to transfer, however, will be granted. Section § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).

This section, the Supreme Court explains, "is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quotation marks omitted) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

"The presence of a forum-selection clause," the Court emphasizes, "will be a significant factor that figures centrally in the district court's calculus." *Id.* Indeed, "the forum clause should control absent a strong showing that it should be set aside." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972); *see Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing forum selection clause in consumer form contract); *see also Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009) ("A forum selection clause should be upheld absent a strong showing that it should be set aside."); *but see Ricoh*, 487 U.S. at 31 ("The forum-selection clause, which represents the parties' agreement as to the most proper forum, should receive

neither dispositive consideration . . . nor no consideration . . . but rather the consideration for which Congress provided in § 1404(a).").

"When evaluating the enforceability of a forum selection clause," the Sixth Circuit instructs, courts should consider three factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *PartyGaming Ltd.*, 589 F.3d at 828 (citing *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 375 (6th Cir. 1999)). Moreover, "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced." *PartyGaming Ltd.*, 589 F.3d at 828 (citing *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227, 1229 (6th Cir. 1995)).

Here, each of the factors supports the forum selection clause's enforceability.

**1**

First, it was not obtained by the Employer by fraud, duress, or other unconscionable means. The Sixth Circuit cautions that to establish this factor, "the party opposing the clause must show fraud in the inclusion of the clause itself." *PartyGaming Ltd.*, 589 F.3d at 828.

The clause here was obtained by the Employer exercising its right to modify the terms of the pension plan. *See* PBG Collective Bargaining Agreement 34 (quoted above). The Employer, moreover, notified its employees of the clause's inclusion in the PEP Plan. See PEP 2010 Modification Notice 1 (quoted above). And it specifically notified Plaintiff of the clause. Defs.' Mot. Ex. C, at 1.

**2**

Second, there is no evidence that the designated forum, the United States District Court for the Southern District of New York, would ineffectively or unfairly handle the suit.  To establish this factor the party opposing the clause must demonstrate "that the litigants will be denied any remedy or will be treated unfairly."  *PartyGaming Ltd.*, 589 F.3d at 829.

Here, no such showing is made of the United States District Court for the Southern District of New York.  On the contrary, that court is frequently recognized as one of the nation's finest on a wide range of matters.[1]

**3**

And third, the designated forum is not so seriously inconvenient as to be fundamentally unfair.  On this factor, *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991) is instructive. There, the plaintiffs were Washington state residents.  The forum selection clause selected the defendant's home state of Florida.  The evidence demonstrated "that the [plaintiffs] [we]re physically and financially incapable of pursuing this litigation in Florida."  *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 379 (9th Cir. 1990), *rev'd sub nom. Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991).  Nevertheless, the Supreme Court enforced the forum selection clause, concluding that it did not offend "fundamental fairness."  499 U.S. at 595.

---

[1] *See generally* Irving R. Kaufman, *New Remedies for the Next Century of Judicial Reform: Time As the Greatest Innovator*, 57 Fordham L. Rev. 253, 254 (1988) ("When New York emerged as the preeminent seaport and mercantile center for the nation, the Second Circuit, along with the District Court for the Southern District of New York, became the foremost American admiralty court.  At the same time, the unique judicial talent of such luminaries as Learned Hand, Augustus Hand, Thomas Swan, Charles Clark and Jerome Frank contributed immeasurably to the national development of all areas of the law."); Randy S. Kravis, *Does A Song by Any Other Name Still Sound As Sweet?: Digital Sampling and Its Copyright Implications*, 43 Am. U. L. Rev. 231, 276 n.29 (1993) (noting that the Southern District of New York is the "leading district for copyright cases"); C.R. Bowles & John Egan, *The Sale of the Century or A Fraud on Creditors?: The Fiduciary Duty of Trustees and Debtors in Possession Relating to the "Sale" of A Debtor's Assets in Bankruptcy*, 28 U. Mem. L. Rev. 781, 810 (1998) (noting that in bankruptcy the Southern District of New York is "the leading jurisdiction for the filing of 'mega-cases'").

Here, as in *Shute*, the forum selection clause selects the state where the defendants are headquartered.  Unlike in *Shute*, moreover, the plaintiff has offered no evidence that he is incapable of litigating the matter in New York.  Enforcing the provision is not fundamentally unfair.

In sum, the forum selection clause is enforceable.  Defendants are entitled to have the case transferred to the United States District Court for the Southern District of New York.

## B

Against this conclusion, Plaintiff makes four principal arguments.  None have merit.

## 1

First, Plaintiff writes: "Defendants have failed to present admissible evidence of the forum-selection clause."  Pl.'s Resp. 1.  Plaintiff elaborates: "Defendants have not presented a copy of the PEP Plan and, therefore, cannot establish the contents of the Plan provisions, including the existence of the forum selection clause."  *Id*. at 5.

Contrary to Plaintiff's contention, Defendants have produced a copy of the PEP Plan. *See* PEP 2010 Plan Amendments, *attached as* Defs.' Reply Ex. B.  Defendants have also produced an affidavit of the director of PepsiCo, Inc.'s retirement plans, Chad Ryan, in which the gentleman testifies that this document is a "true and accurate copy" of the plan  Ryan Supp. Aff. ¶ 3, *attached as* Defs.' Reply Ex. A.  And Defendants have produced a copy of the notice circulated to employees explaining the terms of the plan amendments, including the forum selection clause.  *See* PEP 2010 Modification Notice, *attached as* Defs.' Mot. Ex. A.  Defendants have established the existence of the forum selection clause.

**2**

Next, Plaintiff argues "this Court should defer judgment on this motion and allow time to take discovery."  Pl.'s Resp. 6.  Plaintiff explains: "Defendants have presented evidence outside of the pleadings.  As such, this Honorable Court should treat Defendants' motion as one brought under Rule 56."  *Id*. at 5.

Contrary to Plaintiff's contention, on a motion to transfer pursuant to § 1404(a) a court is not limited to the pleadings.  Rather, "a court may consider undisputed facts outside the pleadings."  *Huang v. Napolitano*, 721 F. Supp. 2d 46, 47 (D.D.C. 2010) (citing *Cooper v. Farmers New Century Ins. Co.,* 593 F.Supp.2d 14, 18–19 (D.D.C. 2008)); *see also Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002) (same); *Moore v. AT & T Latin Am. Corp.*, 177 F. Supp. 2d 785, 788 (N.D. Ill. 2001) (same); *Solow Bldg. Co., LLC v. ATC Assocs.*, *Inc.,* 175 F.Supp.2d 465, 469 (E.D.N.Y. 2001) (same).  As Judge Donald elaborates:

> A district court possesses broad discretion in deciding whether to transfer venue, and the party seeking a transfer under § 1404(a) bears the burden of demonstrating by a preponderance of the evidence that transfer to another district is warranted.  To that end the court may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff.

*United States v. Gonzales & Gonzales Bonds & Ins. Agency, Inc.*, 677 F. Supp. 2d 987, 991 (W.D. Tenn. 2010) (citations and quotation marks omitted) (quoting *Nisby v. Barden Miss. Gaming, LLC*, No. 06-2799 Ma, 2007 WL 6892326, at *5 (W.D. Tenn. Sept. 24, 2007)).

Here, the undisputed evidence is that the Employer implemented the forum selection clause.  And its terms are not in dispute.

**3**

Arguing in the alternative, Plaintiff asserts that even if the Court considers the forum selection clause, "[t]he 2009 Restatement's language establishes that the forum-selection clause does not apply to Plaintiff's claims and Defendants have failed to identify any Plan language to the contrary." *Id*. at 6. Plaintiff elaborates: "Defendants have failed to establish that the forum-selection clause or any other portion of the PEP Plan modifies Section 1.3 of the 2009 Restatement." *Id*.

Plaintiff is correct that § 1.3 of the 2009 Restatement applies. But so does the forum selection clause. The two sections are not in conflict.

Section 1.3, as noted, provides: "The rights and benefits of any person entitled to benefits under this Plan shall be determined in accordance with the applicable provision of the Plan in effect at the time the applicable event occurs, except as otherwise explicitly provided in the Plan." PBG Plan § 1.3.

Thus, the question is what the "applicable event" is under the forum selection clause. That clause, as noted, provides:

> Any claim or action filed in court or any other tribunal in connection with the Plan by or on behalf of a Petitioner [such as Plaintiff] shall only be brought or filed in the United States District Court for the Southern District of New York, effective for claims and actions filed on or after January 1, 2011.

PEP 2010 Plan Amendments 11. Thus, under § 1.3 the "applicable event" for forum selection purposes is filing the civil action. (It is not the transaction or occurrence giving rise to the cause of action, such as the plan administrator's denial of ERISA benefits.) The forum selection clause — which took effect for Plaintiff on June 14, 2010[2] — applies to "actions filed on or after

---

[2] Briefly, while the forum selection clause took effect on January 1, 2010 for many PepsiCo employees, because of the merger it did not become applicable to PBG Plan participants like Plaintiff until June 14, 2010. *See* PEP 2010 Modification Notice 1 (quoted above).

January 1, 2011." Plaintiff filed suit on November 13, 2012. Accordingly, the forum selection clause applies.

Moreover, even if the "applicable event" is the occurrence giving rise to the cause of action rather than the filing of the action in court, the forum selection clause would nevertheless apply. As the Seventh Circuit observes, "absent any language suggesting ambiguity on the vesting question, the controlling plan must be the plan in effect at the time the benefits were denied." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003); *see also Grosz-Salomon v. Paul Revere Life Ins. Co*., 237 F.3d 1154, 1160 (9th Cir. 2001) ("[A]n ERISA cause of action based on a denial of benefits accrues at the time the benefits are denied.").

Here, the "applicable event" § 1.3 is unambiguous. For forum selection purposes, it is filing the civil action. Even if the "applicable event" were not the filing of the lawsuit but rather the plan administrator's denial of benefits, the forum selection clause would nevertheless apply to Plaintiff's claim. The clause took effect no later than June 14, 2010. The administrator made his final decision denying Plaintiff disability benefits on July 15, 2010.

The clause applies.

**4**

 Finally, Plaintiff argues that Defendants should be equitably estopped from relying on the forum selection clause. Pl.'s Resp. 8–9. Plaintiff writes: "Defendants encouraged Plaintiff to trust the 2009 Restatement, which Defendants represented was the Plan statement relevant to his claims. The 2009 Restatement does not advise Plaintiff that he must file in Southern District of New York; therefore, Plaintiff's reliance on the fact that he could file in any appropriate federal court was reasonable and justified." *Id*. at 9.

Plaintiff's argument lacks merit.  In the Sixth Circuit, equitable estoppel claims generally have five elements:

> 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010) (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1298 (6th Cir.1991)).

In the particular context of pension plans, however, the Sixth Circuit adds three elements. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 553 (6th Cir. 2012) (citing *Bloemker*, 605 F.3d at 442).  Specifically, a plaintiff must establish "the traditional elements of estoppel plus (1) a written representation; (2) plan provisions which, although unambiguous, do not allow for individual benefit calculation; and (3) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel."  *Id.*

In *Bloemker*, for example, the plan administrator sent the plaintiff a letter which provided "we hereby certify that you are entitled to receive the retirement benefit specified above" ($2,339.47 per month for his life, plus a survivor benefit for his wife).  605 F.3d at 439.  The plaintiff then elected to receive the payments and actually received them for one year.  After a year, however, he was told "he had been overpaid the amount of $509.78 per month for 22 months and that he was required to repay the $11,215.16 that he was overpaid."  *Id.*  Plaintiff brought suit and the Sixth Circuit concluded that he had a valid claim for equitable estoppel, explaining:

> He alleges that he received a document stating that he could elect a pension benefit of $2,339.40 per month for life with an additional benefit of $1,169.75 per

month for his wife after his death if she survived him. This document stated that Stoner certified that Bloemker was entitled to receive that benefit. It clearly satisfies the first estoppel requirement. The second element requires the plaintiff to demonstrate that the defendant's actions contained an element of fraud, either intended deception or such gross negligence as to amount to constructive fraud, which Bloemker has done by alleging that the Plan and Stoner were aware of the true facts and that they intended for Bloemker to rely upon their representations. These allegations also satisfy the third estoppel element. Finally, Bloemker has alleged that he was not aware of the true facts, and that he relied upon these misrepresentations when deciding to retire, which is sufficient to satisfy the remaining elements of estoppel.

*Bloemker*, 605 F.3d at 443 (quotation marks, brackets, and citations omitted) (quoting *Crosby v. Rohm & Haas Co*., 480 F.3d 423, 431 (6th Cir. 2007)).

Here, in contrast, Plaintiff does not establish the elements of equitable estoppel. First, Plaintiff offers no evidence that Defendants' actions were fraudulent. Likewise, Plaintiff does not establish "unawareness of the true facts." On the contrary, Plaintiff implicitly acknowledges that he was aware of forum selection clause's restrictions almost a year before he filed suit in this Court. "Under the terms of the Plan," Defendants wrote to Plaintiff in December 2011, "any claim or action brought in connection with the Plan by a representative on your behalf shall only be brought or filed in the United States District Court for the Southern District of New York." Defs.' Mot. Ex. C, at 1. Plaintiff did not file suit in this Court until November 2012.

For the same reason, he cannot establish justifiable reliance. Plaintiff knew about the forum selection clause. Filing suit in this Court, he chose to ignore it.

And finally, he does not establish extraordinary circumstances like those present in *Bloemker*. In sum, Plaintiff's arguments against enforcing the forum selection clause lack merit.

**IV**

Accordingly, it is **ORDERED** that Defendants' motion to dismiss or transfer (ECF No. 5) is **GRANTED IN PART AND DENIED IN PART**.

It is further **ORDERED** that pursuant to 28 U.S.C. § 14014(a) the case is

**TRANSFERRED** to the United States District Court for the Southern District of New York.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: February 6, 2013

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served
upon each attorney or party of record herein by electronic means or first
class U.S. mail on February 6, 2013.

s/Tracy A. Jacobs
TRACY A. JACOBS